Wm. M. Sharp *et al.*, Respondents, v. Robert A. Knox *et al.*, Appellants.

Kansas City Court of Appeals, February 8, 1892.

1.  **Principal and Agent:** how shown : extent. An agency may be created by the express words or acts of the principal, or it may be implied from his conduct and acquiescence, so the nature and extent of the authority of an agent may be implied or inferred from circumstances ; and, where it appears the alleged agent has repeatedly performed acts like the one in question, which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred.

2.  ———— : presumption as to general agency. When an agency is shown to exist, the presumption would be that the agent's authority was general, rather than limited ; and the agent's authority in this case is *held* to result, by inevitable implication, from the long-continued and repeated acts of acquiescence.

3. ———: LOANING AND COLLECTING AGENCY : POSSESSION OF SECURI-
TIES. A mortgage debtor is authorized to infer that an agent, who
makes a loan and retains possession of the bond and mortgage, is
empowered to receive payments of both interest and principal ; but
this inference is founded on his custody of the securities, and ceases
when these are withdrawn by the creditor ; however, where the
element of prior acquiescence in the collection of interest and prin-
cipal enters into the transaction, as in this case, it takes it out of
the operation of the rule as to the possession of the securities.
(*Ferneau v. Whitford*, 39 Mo. App. 311, *followed, and other cases
distinguished.*)

*Appeal from the Nodaway Circuit Court.*—HON. C. A.
ANTHONY, Judge.

AFFIRMED.

*S. R. Beach* and *W. C. Frank,* for appellants.

(1) The vital question to be determined by this
court is, did Craig's dealings with respondent, in the
Knox business, constitute him Knox's agent in so
general and unlimited a degree as to bind Knox in what-
ever Craig saw fit to do, and to protect the borrower,
respondent? We say not, and that the court erred in
its finding in the affirmative and to that effect, under
the evidence. The authorities all go to establish the
law to be that respondent must show, *first,* that Craig
was our agent with sufficient general authority to cover
the act, which may be shown by acts of Knox, that go
to "hold him out as such," or proof of such general
powers. Or, *second,* by showing special authority from
Knox to collect this debt, or, *third,* by showing knowl-
edge of, and ratification by, Knox of the unauthorized
act. Respondent claims no evidence to establish either
the second or third proposition, but relies wholly upon
the first, to-wit, general agency, or such powers as author-
ized Craig to collect this note, without its being assigned,
or in his possession at the time. *Graham v. Savings
Inst.,* 46 Mo. 186. (2) Appellant kept his own securi-
ties in his own possession in Indiana, except when

sent here to Craig for collection of interest, then to be returned, or when a note was specially assigned to Craig for collection of the principal. There can be little or no doubt of this proposition, under the evidence; Henry Knox says so, appellant says so, Craig, in the main admits it, and the letters of the parties abundantly establish it. (3) Although it seems that Craig did pretend to collect this and some other notes in suit, without having them in his possession, yet the evidence shows that Knox knew nothing of it; Craig continued to report them as good subsisting loans, and to pay Knox interest upon them, and that as to notes that he did get from Knox to collect he uniformly (with one or two exceptions, hereafter noticed) wrote to Knox that the party wished to pay off in full, "please assign and send note to me." *Smith v. Kidd*, 23 Am. Rep. pp. 157, 165; *Crane v. Gruenewald*, 17 Am. St. Rep. 643; *Langtry v. Sutton*, 5 New York Sup.; *Pepper v. Cairns*, 19 Am. St. Rep. 625; Am. Digest, 1889, p. 3115. (4) A payment of the note to Craig, not only when Craig didn't have it in possession, but also when the debtor knew he had not, and so could not receive or take up his security, shows that the payer reposed a greater trust in Craig than Knox did, and he paid it when Craig did not have it, and without obtaining its surrender, at his risk, unless he shows sufficient actual authority; sufficient "holding out" of Craig by Knox, or ratification as heretofore stated, and payment to Craig as shown by the evidence here, was, we maintain, no payment to Knox, or of the debt, but only created a liability in favor of plaintiff against Craig. 68 N. Y. 130; *Gorrels v. Morton*, 26 App. Court Rep. (Ill.) 433; *Smith v. Kidd*, 23 Am. Rep. 157, 165; 2 Jones, Mort. [3 Ed.] sec. 964; *Brown v. Blydenburg*, 57 Am. Dec. 506, 508; *Draper v. Rice*, 41 Am. Rep. 88; *Ferneau v. Whitford*, 39 Mo. App. 317; 17 Am. St. Rep. 643, *supra;* Am. Digest, 1889, pp. 258–312; *Brooks v. Jamison*, 55 Mo. 505.

*William Ellison,* for respondents.

(1) "While the fact of agency cannot be presumed by the simple fact that one assumes to do some act in that character, yet, when the fact of agency is established, the power which the agent actually does exercise in his principal's business may be looked to as evidence of the actual powers possessed by the agent." *Railroad v. Prince,* 77 Tex. 560. (2) For twelve years, 1878 to 1890, the Knox money was handled exclusively by Craig, loaned and reloaned, collected over and over again by him. There was not a day or an hour, during all of this time, that Knox was not trusting and confiding in Craig, far more than it is necessary to suppose in this case. Without further comment, I respectfully submit the case on the following authority : *Gibson v. Zeibig,* 24 Mo. App. 65.

SMITH, P. J.—This was a suit in equity, the object of which was to obtain a decree to cancel a certain deed of trust, and for the surrender of a certain promissory note secured by the former. The petition alleged that plaintiffs were husband and wife ; that they were in possession of and owned the lands therein described, subject to the Knox deed of trust thereinafter mentioned ; that on the fifteenth day of February, 1888, they executed a note for $750 at nine-per-cent. interest, due three years after date, and secured the sum by said deed of trust, with Knox as beneficiary and Gallatin Craig as trustee ; that Knox had the deed of trust properly recorded ; that the note was payable at the office of Craig & Collins in Maryville, Missouri ; that plaintiff Sharp, about May 1, 1888, while Knox was the legal owner of the note, paid the same off in full to Silas L. Craig, at the said office of Craig & Collins ; that said Craig was the agent of said Knox, duly authorized to receive said payment, and that Knox afterward got the money, and approved the payment ; that afterward

plaintiff tendered the legal fee to Knox, and requested him to satisfy the record as to said deed of trust which he refused to do, etc. The answer denied that Craig was the agent of defendant Knox, duly authorized to receive payment of the Sharp note, or that Knox got the money and approved the payment. The finding and decree were for the plaintiff. Defendant Knox appealed.

It appears from the record before us that, in the year 1878, Craig, who then resided in Nodaway county, in this state, learned that Knox, who was a resident of Vevay, in the state of Indiana, had money to loan, and thereupon the former arranged with the latter to loan it in Nodaway county. The arrangement entered into was that Craig should loan the money at ten per cent. per annum secured by liens on good real estate. The loans to run from three to five years. The amounts to run from $500 up. Craig was to be the judge of the sufficiency of the security and the time to be given, conforming to the desire of Knox as far as practicable. Craig was to get his compensation and commissions from the borrowers. He was to file deeds of trust, and when recorded transmit them with the notes to Knox. Under this arrangement Craig loaned the money of Knox, taking between seventy-five and one hundred notes, aggregating from $15,000 to $20,000. The business relation thus begun continued until 1890.

The evidence consists very largely of the correspondence by letter between Craig and Knox, which covers the period of their business relations just stated. This correspondence is quite extensive, consisting of as many as eighty-five or more letters, the nature of which, for our present purpose, it will be sufficient to allude to. It appears that in 1888, when the note involved in this suit was paid by the plaintiff to Craig, that he (Craig) was collecting interest on all the notes while Knox kept them in his possession. Craig would write to him to be sure to enter the credits on the notes as per statements inclosed, and thereupon he would enter

the credits as requested. Craig in a number of instances collected notes before the same were due, and sent new notes to Knox in lieu thereof. Craig seems to have used his own judgment without interference as to whom or in what amounts or the length of time to make the loans, and the nature and extent of the security to be taken. He collected interest without special authority from Knox; for on one occasion Knox wrote to Craig to learn if he had any of his money on hand, and if so to send him $1,000, as he was in need of money.

The business between them for several years before its termination was kept in the form of a book account with a debit and credit side. By this it appears that Craig frequently advanced money out of his own means in making loans for Knox, charging interest on such advancements until he reimbursed himself out of money collected for Knox. During the entire twelve years there was but one loan on which Craig did not collect both principal and interest.

It appears in a number of instances that Craig after he had collected a note would write to Knox for the note as if it had not been collected, telling him to send it for collection. Craig in explanation of this testified that he wrote to Knox in that way, not because he had no authority to collect, as he did, but because he feared Knox would call for a prompt remittance of the money, which would have greatly embarrassed him to have complied with such request. It clearly appears that Craig collected notes before due, and then requested Knox to send the notes which he invariably did. The correspondence between Craig and Knox conclusively shows that while Knox kept the notes generally in his possession that it was the habit of Craig to collect any of them whether due or not, and to substitute other notes in their stead, and in fact he acted as the vice-principal of Knox in respect to his Missouri loans in the most comprehensive sense of that term. Every act performed by him in respect to these loans seems to

have been approved or acquiesced in. The correspond-ence shows that Knox always promptly sent notes or made entries thereon, as requested by Craig, and that there never was the least disapprobation or dissatisfac-tion with the conduct of Craig until after the col-lapse.

The undisputed evidence is that on February 15, 1888, Craig loaned for Knox to plaintiff $750, taking a note therefor, payable to Knox on or before three years after date. Plaintiff executed a deed of trust on his land to secure the note. Craig told plaintiff at the time of the execution of the note that it could be paid at his office. The note and deed of trust were sent to Knox. On March 15, 1888, plaintiff through Craig secured another loan from another capitalist, by giving his note and deed of trust on his land for the same; out of this last-named loan he paid off to Craig the Knox note. Craig then told plaintiff that he would give him a receipt against the note and mortgage, which he accord-ingly did; he further then told plaintiff that he did not then have the note in his possession, but would send back to Knox and get it. The matter thus remained until Craig failed, when it was discovered that Knox still held plaintiff's note, and that the deed of trust had not been satisfied on the record.

The decisive question presented for our determina-tion is that of agency, whether Craig was authorized to collect of the plaintiff the note given by him to Knox while it was in the latter's possession. The rule is ele-mental that agency is directly proven by express words of appointment, whether orally uttered or contained in some deed or other writing. It is directly established by evidence of the relative situation of the parties, or of their habits and course of dealing and intercourse, or is decided from the nature of the employment or from subse-quent ratification. Greenl. Ev., sec. 60. An agency may be created by the express words or acts of the principal, or it may be implied from his conduct and acquiescence; so

the nature and extent of the authority of an agent may be implied or inferred from circumstances. If the agency arises by implication from numerous acts done by the agent with the tacit consent or acquiescence of the principal it is deemed limited to acts of like nature. Story on Agency, secs. 45, 97. It has been in effect repeatedly held in this state that agency and the scope of an agent's authority are facts to be proven like other facts. They may be proven by the transactions that have taken place between the principal and the agent, showing what the understanding was as to the scope of the agent's authority ; evidence of a course of dealing by an agent sanctioned by his principal is one of the recognized modes of proving the extent of an agency ; and such evidence is admissible whether the party introducing it knew at the time of the transaction in controversy, that the dealings had taken place or not. *Gibson v. Zeibig*, 24 Mo. App. 65 ; *Greeley-Burnham Grocery Co. v. Capen*, 23 Mo. App. 301 ; *Wheeler v. Metropolitan Co.*, 25 Mo. App. 190 ; *Brooks v. Jamison*, 55 Mo. 505 ; *Franklin v. Globe*, 52 Mo. 461 ; *Edwards v. Thomas*, 66 Mo. 468. In the last-cited case it is said, " Instances there are without number to be found in books, when authority of an agent to act in a given manner follows by inevitable implication from the mere fact of his employment or from long-continued and repeated acts of acquiescence." In Mecham on Agency, section 86, it is stated : "That, where it appears the alleged agent has repeatedly performed acts like the one in question which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred. And this statement of the rule seems fairly supported by a number of adjudicated cases. *Jewett v. Railroad*, 10 Ind. 539 ; *Fisher v. Campbell*, 9 Por. (Ala.) 210 ; *Robinson v. Green*, 5 How. (Del.) 115 ; *Rawson v. Curtis*, 19 Ill. 453 ; *Emerson v. Cogswell*, 16 Mo. 77 ; *Walsh v. Pierce*, 12 Vt. 130 ; *Downer v. Morrison*, 2 Gratt. (Va.) 237. When the principal puts an agent forward as

general agent, though in a particular line, or places him in a position where others are justified in the belief that his powers are general, the restriction that may be imposed upon him privately will be immaterial except between him and his principal. *New Albany v. Meyers*, 43 Mo. App. 124 ; *Baker v. Railroad*, 91 Mo. 152. And, when an agency is shown to exist, the presumption would be that the agent's authority was general rather than limited. Mecham on Agency, sec. 9.

It is conceded that Craig was the agent of Knox, but it is insisted that his powers as such agent were special and limited. As has already been stated Craig, as the agent of Knox, made repeated collections of the notes of the latter while the same were in his possession at his home in Indiana, and under precisely the same circumstances that the note in question was collected, and which collections so made were satisfied and adopted by Knox. For the performance of the disputed act in this case we think, under the principles of law just adverted to, the authority of Craig may be inferred. The authority of Craig, as agent of Knox, to collect the note of plaintiff results by inevitable implication from the long-continued and repeated acts of acquiescence, to which reference has been made. We think the general authority of Craig to collect and otherwise manipulate the Missouri loans of Knox is fairly deducible from the facts shown by the evidence.

In opposition to the view just expressed defendant Knox cites Jones on Mortgages, section 964, where it is stated by that author that the general rule is that a mortgage debtor is authorized to infer that an attorney or agent who has been employed to make a loan, and retains possession of a bond and mortgage, is empowered to receive payments of both interest and principal ; but this inference is founded on his custody of the securities, and ceases when these are withdrawn by the creditor. This rule is incontrovertibly correct, but it

is wholly inapplicable to a case like the one under consideration. But in this case the inference of authority of the agent is not based upon a single, unratified transaction of his, but upon similar repeated acts, which were acquiesced in by the principal. The element of prior acquiescence in the performance of similar acts of the agent by the principal enters into this case, which takes it out of the operation of the rule.

In *Ferneau v. Whitford*, 39 Mo. App. 311, it was said by us that if money be due on a written security it is the duty of the debtor, if he pay an agent, to see that the person to whom he pays is in possession of the security ; and, if he make payment to such an agent, who has not in his possession such security, it is at his risk. Yet, if the principal by his conduct and course of dealing held out one to be his agent to receive money and thus induces his debtor to pay money to such agent, he is concluded thereby. To permit the principal in such case to deny the authority of the agent would be to perpetrate a fraud upon the debtor. The facts of this case bring it within the just principle announced and applied in that case.

Defendant places much reliance on the case of *Smith v. Kidd*, 68 N. Y. 130. An examination of that case will show it to be entirely unlike this in its facts and clearly distinguishable from it. Before the time when the agent collected the note there in controversy, he had not, as in this case, repeatedly collected other notes for the principal under like circumstances. The note then collected by him, while it was in possession of the principal, was the first he had collected without the actual possession of the note and a special authority for that purpose. He had never before that time undertaken to collect the principal when he was not intrusted with the custody of the securities. Hence, there were no basic facts, as in the present case, to warrant the inference that the agent was invested with authority to collect the principal of the bond while

it was in the custody of the payee. And the same remarks are alike applicable to the cases cited by the defendant from 120 N. Y. 274, and 56 Iowa, 114. The defendant has cited no parallel case which decides anything at variance with what we have ruled in this case.

We have examined the other assignments of error, and conclude that the same cannot be sustained.

It may not be out of place to here remark that had it not been for the counter abstract of the plaintiff, the correctness of which was not controverted the grounds of the appeal, under the rules and repeated decisions of this court, could not have been examined by us.

The decree of the circuit court must be affirmed. All concur.