PATRICK HEFFERMAN, Respondent, v. WILLIAM C. BOTELER, Appellant.

### Kansas City Court of Appeals, March 4, 1901.

1. **Principal and Agent: PAYMENT OF NOTE: RISK: ESTOPPEL.** One paying money on a negotiable security to another as agent for the holder, when such agent has not the paper in possession, assumes the risk of showing the authority of such agent to collect, or that the holder by his conduct has led the payor to believe such authority existed.

2. **————: LOAN BROKER: AUTHORITY TO COLLECT.** The fact that a loan broker negotiates the loan does not authorize him to collect either principal or interest though the security be payable at his office; nor does the fact that he has authority to collect interest authorize him to collect the principal.

3. **————: ————: ————: ESTOPPEL.** Where the payor does not know of the holder's ownership, there can be no estoppel against the holder to deny the agency of a broker.

4. **————: CIRCUMSTANTIAL EVIDENCE: ESTOPPEL.** An actual agency may be established by circumstantial evidence and the

course of business between the parties; but there is no estoppel in such case.

5. ———: LOAN BROKER: SUFFICIENCY OF EVIDENCE. The evidence in this case is reviewed and held insufficient to make a loan broker agent of the holder of a security to collect the same. Cases considered.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

REVERSED

*Botsford, Deatherage & Young* for appellant.

(1) The court below, as evidenced by its memorandum filed with the papers on the decision of the cause, based its opinion and decree upon the proposition found by the court, that the Sexton Security Company was the agent of defendant Boteler for the loan of moneys, and the court below, in its decision, relied upon the case of Sharp v. Knox, 48 Mo. App. 169 to 176, to support its finding and decree. Appellant contends that the case of Cummings v. Hurd, 49 Mo. App. 139, is in point, and that said case of Sharp v. Knox, 48 Mo. App. 169, is not in point. (2) The court below had no right to infer authority on the part of the Sexton Security Company as agent of defendant Boteler, to receive said $500, which was a part of the principal debt, because said security company may, prior thereto, have received items of interest from the plaintiff for payment to defendant Boteler on the note and deed of trust in question. Biggerstaff v. Martson, 161 Mass. 101; Mulcahay v. Fenwick, 161 Mass. 164; Klindt v. Higgins, 64 N. W. Rep. 414; Security Co. v. Douglass, 44 Pac. Rep. 257; Word v. Smith, 7 Wallace 447; Security Co. v. Graybeal, 52 N. W. Rep. 497; Bank v. Benson, 52 N. W.

Hefferman v. Boteler.

Rep. 705; Jay v. Vance, 62 N. W. Rep. 140; Bronley
v. Lathrop, 63 N. W. Rep. 510; Trowbridge v. Ross,
63 N. W. Rep. 534; Cox v. Cutter, 28 N. J. Eq. 13;
Garrels v. Horton, 26 Ill. App. 433; Curtis v. Drough, 1
Malloy 487; Smith v. Kidd, 68 N. Y. 136; Stiger v. Bent,
111 Ill. 333; 18 Am. and Eng. Ency. of Law, 188, 199; Rob-
inson v. Chaney, 19 Neb. 58, 60; Cheney v. Libbey, 134 U.
S. 69, 82; Ferneau v. Whitford, 39 Mo. App. 311; Cummings
v. Hurd, 49 Mo. App. 139, 145; Padley v. Neill, 134 Mo.
364, 378.

*Scarritt, Griffith & Jones* for respondent.

(1) No question of election or estoppel is properly before
the court.     Fadley v. Smith, 23 Mo. App. 87; Seckinger v.
Mfg. Co., 129 Mo. 590; Stevenson v. Judy, 49 Mo. 227;
Welsh v. Stewart, 31 Mo. App. 376.     (2) The books of the
Sexton Security Company were properly admitted in evidence.
Vineyard v. Matney, 68 Mo. 105; Lyon v. LaMaster, 103 Mo.
612; Bartlett v. Veach, 128 Mo. 91.     (3) The finding of the
court that the Sexton Security Company was the agent of
defendant Boteler in collecting the $500 in question, is cor-
rect under the law and the evidence.     May v. Trust Co., 138
Mo. 275; Manshardt v. Rott, 59 Mo. App. 505; Miller v.
Wilson, 126 Mo. 48; Johnson v. Hurley, 115 Mo. 513; Fer-
neau v. Whitford, 39 Mo. App. 311; Brooks v. Jameson, 55
Mo. 505; Giggson v. Zeibig, 24 Mo. App. 65; Lord v. Scham-
loeffel, 50 Mo. App. 360; Greeley-Burnham Co. v. Capen, 23
Mo. App. 301; Bank v. Ins. Co., 145 Mo. 127; Sharp v. Knox,
48 Mo. App. l. c. 177, and other cases cited supra.     (4) There
is strong evidence in this case, and sufficient to support the
finding of the court, that the Sexton Security Company had
express authority from Boteler to act in this particular matter.

ELLISON, J.—This is a proceeding in equity whereby plaintiff asks the court to cancel a deed of trust and a negotiable promissory note which the trust deed secured. The decree in the trial court was for plaintiff.

The Sexton Security Company (managed by two Sexton brothers) was engaged in the loan brokerage business in Kansas City, Missouri. Plaintiff, having noticed their advertisement, called at their office and made application for a loan of $650 for one year, to be secured by a deed of trust on certain property in the city. After some slight difficulty in correcting the title to the property, the loan was made and the note, with two semiannual interest coupon notes, and deed of trust were executed, the note and interest made payable to the company and at the company's office. Afterwards, plaintiff paid to the company the first interest coupon due in six months and took its receipt for the same, the note and coupons having been transferred by the company to defendant Boteler who had possession; the coupon was not delivered to plaintiff for a day or two when it was mailed to him by the company. Afterwards, a while before the note became due, plaintiff called at the company's office and asked one of the Sextons if he could grant an extension of time on the note. Sexton answered that he thought he could do so, but for him to call again in a day or two and he would let him know. Plaintiff called and was told by Sexton that if he would pay the remaining half year's interest coupon, then about due, and $500 on the principal, that the party who owned the note would extend the balance. Plaintiff thereupon paid the interest and $500 on the principal to the company, taking its receipt for the same. This payment of interest was paid to defendant Boteler by the company, but the $500 paid on the principal was not paid to him. The company, shortly thereafter, became insolvent and defendant, claiming that no payment of principal had been made on the

note, the present proceeding was instituted by plaintiff for cancellation as before stated. The sole question to be considered is, whether the security company was defendant Boteler's agent to collect the principal of the note.

One who pays money on a negotiable security to another as agent for the holder, when such agent has not the paper in possession, does so at the peril and risk of being able to show that the party to whom he paid was the expressly authorized agent to collect; or else that the holder had, by a course of conduct, led the payor to believe he was so authorized. Cummings v. Hurd, 49 Mo. App. 139, and cases hereinafter cited. We have no hesitation in stating that there is not sufficient evidence to warrant a finding that defendant, by his conduct, held the security company out as his agent to collect the sum paid by this plaintiff on the principal.

That our position as to the rights of these parties may be better understood we will concede (without deciding) that the loan to plaintiff was made by the company for defendant and that defendant's money was paid over to plaintiff by the company when the loan was consummated. In the same way we we will concede that the defendant by his conduct held out the company as authorized to collect the two interest coupons. Neither of these facts make plaintiff's case. The fact that a broker negotiates a loan to a borrower for a lender does not show that such broker has authority to collect either principal or interest. And this is true even though the sum loaned is made payable at the broker's office. Nor does the fact that the broker is authorized to collect interest for the lender show that he has authority to collect the principal. Englert v. White, 92 Iowa 97; Cooley v. Willard, 34 Ill. 68; Stiger v. Bent, 111 Ill. 328, 338; Smith v. Kidd, 68 N. Y. 130; Biggerstaff v. Marston, 161 Mass. 101; Security Co. v. Graybeal, 85 Iowa 543; Klindt v. Higgins, 95 Iowa 529; Bank v. Bur-

son, 90 Iowa 191; Joy v. Vance, 104 Mich. 97; Bromley v. Lathrop, 105 Mich. 492; Trowbridge v. Ross, 105 Mich. 598.

The principle upon which an agency is established by conduct is estoppel. That is to say, the principal's conduct must be such as to mislead the debtor. His conduct must be such as to make it appear to the debtor that a certain party is acting as his agent; and though not true in point of fact, yet justice requires that he should not be allowed to dispute it in a contest with the party whom he has, by his conduct, misled. It must follow that in order to avail himself of this the debtor should have known of the principal's conduct. Otherwise, he could not have been misled or deceived by appearances. It has therefore been held in cases in all substantial respects like this, that when the payor does not know of the holder's ownership of the note there can be no estoppel against the holder to deny the agency of a third party, for the reason that in such case the payor could not be misled by the holder. Joy v. Vance, 104 Mich. 97; Biggerstaff v. Marston, 161 Mass. 101. And so it is stated in one of the principal cases cited for plaintiff (to which we shall presently again refer) that the authority of such an agent will be conclusively presumed "so far as may be necessary to protect the rights of third persons *who have relied thereon in good faith,* and in the exercise of reasonable prudence. Bank v. Ins. Co., 145 Mo. 127, 138. Now, in this case there is not a particle of evidence that plaintiff knew of any transactions between the defendant and the Sextons or the company. Indeed, plaintiff admits that he did not know defendant and never saw him until after the payment in controversy and after the company closed its doors. He therefore could not have been even influenced, much less misled, by defendant's transactions with the company. He knew that some one owned the note, but he knew the party would not

entrust it to the company and that the latter only got possession of the coupons by paying the sum due on them. This consideration disposes of the theory of agency by defendant's conduct and course of dealing.

But actual agency may be established by proof of circumstances—by circumstantial evidence—bearing upon the question. Wharton on Agents, sec. 44; Norton v. Bull, 43 Mo. 113. Thus "where it appears that the alleged agent has repeatedly performed acts like the one in question, which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred. Mechem on Agency, sec. 86; Sharp v. Knox, 48 Mo. App. 169. This mode of proof of agency does not rest on estoppel. It is proof of a fact by deduction or inference from other facts. It has therefore been correctly held that the acts need not be shown to have been known by the party claiming that he dealt with an agent. Sharp v. Knox, supra; Gibson v. Zeibig, 24 Mo. App. 65.

The acts and conduct between defendant and the Sexton Security Company, by which it is sought to infer actual agency, consisted in the latter collecting interest on the greater part of other notes which it had transferred to him. This was done by the company notifying the borrowers, some days before interest was due, to come in and pay. They generally responded to such notice and upon paying would receive a receipt from the company with the statement that the coupon would be mailed to them when obtained from the holder. There was also evidence of two collections of principal (besides the one in controversy) on two separate loans. The evidence to show that these were collected by the company is uncertain and indefinite. They were known as the Fezler and Moore loans. Evidence as to the Fezler loan is found in several parts of the abstract. Taking it altogether, it becomes clear that defendant

himself collected that loan. The Moore loan seems also to have been collected by defendant himself. It was in reality not collected. It was a note which the company had sold to defendant and then afterwards it was sold to one of the company's clients, but as well as we can make out from the record, defendant was present and the money received for it was paid by the purchaser's check to the company and then the company immediately gave its check to defendant. The company kept an account of payments of interest and of these payments of principal. This account shows the company to be charged and credited with the Moore money on the same day. The reasonable inference is that the transaction was under defendant's supervision and the act of the company getting the check from the purchaser and then giving its check to defendant was a mere formality. The chief witness for plaintiff was one of the Sextons and he states that the company never collected any principal on any of defendant's loans save that of this plaintiff. No account was ever rendered by the company to defendant, and he did not know that the company had an account with him on its books.

The evidence of actual agency is too vague and unsubstantial to support a finding that such agency existed. And when it is considered that defendant kept the notes in his own possession; that they were never surrendered except on payment and that this plaintiff knew that the note against him had been sold by the company and that it did not at any time afterwards have possession of it or of the interest coupons, it becomes quite evident that the relation of principal and agent did not exist between defendant and the company. Indeed, we believe a fair interpretation of the whole evidence will result in the conclusion that defendant had as much (or even more) ground to suppose the security company was acting as plaintiff's agent as plaintiff had to infer that it was his agent.

Bromley v. Lathrop, 105 Mich. 496.   There were some other matters shown to establish the agency of the company, but they were not of importance as bearing on the question.   The frequency of making loans through the aid or act of another has naturally resulted in litigation on the issue of agency. Numbers of these cases have found their way into the appellate tribunals.   Most of those cases cited above are quite like this case, and in many of them a great deal more appears in support of the claim of agency than was shown here.   We could not sustain the claim made by this plaintiff without putting ourselves in direct conflict with all like cases to which our attention has been called.

But plaintiff, in submitting his brief herein, has ignored the force and authority of the citations we have made, many of which are substantially the counterpart of the present case, and places his reliance upon adjudications in the Supreme and Appellate Courts of this State.   The principal of these are Bank v. Ins. Co., 145 Mo. 127, May v. Trust Co., 138 Mo. 275, and Sharp v. Knox, 48 Mo. App. 169.   Each of those cases involved a question of like kind to the one we are considering, and in each of them it was held that an agency to receive payment existed.   But a consideration of the facts in each of them will disclose, by comparison, how little there is in this case to establish an agency.   In the first of those cases it was shown that the principal, living in a distant State, made loans through an agent in Missouri amounting in the aggregate to $2,350,000.   That the agent had charge of the collection of the interest and principals as they matured on all of these loans. That the agent collected $700,000 of principals and $500,000 of interest on five hundred different loans, in thirty-five counties in the State of Missouri.   All matters pertaining to the loans, their protection and security, were left to the agent. The agent saw that taxes were paid on the mortgaged lands,

attended to insurance, and in short, did everything which could or would have been done by the principal himself had he been on the ground. The agent "had entire charge of the collection of the loans, interest and principals." The holder of the notes and interest coupons in that case, as in this, retained possession of them until notified that the money was paid to the agent in this State. But even under that strong showing, the court said that an express agency had not been established. The court put its decision on the ground that the payor of the note knew of the foregoing facts. That he knew for years of the course and manner of dealing between the principal and agent, and that having made the payment on that appearance and upon such apparent authority, good faith and fair dealing required that the principal should not be allowed to deny the agency thus held forth by him. In the second case, the payment was made to an agent named Cross who negotiated the loan for Jarvis Conklin & Co. The application for the loan of the principal sum was on one of the company's blanks and contained a statement that, "I also agree to pay Jarvis Conklin & Co. or J. C. Cross, their agent, a commission of four per cent." This was signed by the borrower and sent to the company. The note in controversy there was for the commission and it was paid by the borrower to Cross. The court found that the borrower was justified in believing that Cross was interested in the note as he was to receive a part of the commission. Taking this and other evidence into consideration the court found that authority for Cross to collect the note could be implied. The court said (italics ours) : "Considering all the evidence, *the partnership character of* the original debt, the letter of February 8, and all the circumstances, our conclusion is that authority to make the collection is implied."

The last of the foregoing cases was decided in this court. Knox, a resident of Indiana, was the lender and holder of the

notes representing loans he made in Missouri. For twelve years Craig had negotiated the loans for him and had collected the principals and interest. He re-loaned much of this and had the business so completely in his own keeping that Knox would write letters of inquiry, when in need of money, asking that if he had any on hands to send him the sum desired. Craig, as was stated in that case, "acted as the vice principal of Knox in respect to his Missouri loans in the most comprehensive sense of that term." The extent of the proof of facts showing agency on the part of Craig was so much greater than appears in this case that it leaves it altogether inapplicable.

We consider that the decree should be reversed and it is so ordered. All concur.