## SAMUEL T. JOLLY, Respondent, v. FRED E. HUEBLER et al., Appellants.

### Kansas City Court of Appeals, October 5, 1908.

1. **APPELLATE PRACTICE: Equity: Law and Fact.** Upon an appeal in equity the appellate court reviews the issues of fact as well as of law.

2. **PRINCIPAL AND AGENT: Loans: Collection: Interest: Principal.** The evidence relating to the relations between the loaner of money and a loan agent is reviewed and held that the agent had not only authority to collect the interest, but having been the agent who made the loan and being in possession of the papers, the payment of the principal to him discharged the note, notwithstanding he had no authority to endorse the note, and though the burden of proof was on the debtor to show his agency.

Appeal from Callaway Circuit Court.—*Hon. Alexander H. Waller*, Judge.

REVERSED.

*David H. Harris* for appellants.

(1) This being an equity case, the appellate court will review the whole evidence for the purpose of determining the case on its merits. Nichols v. Nichols, 39 Mo. App. 291; Drosten v. Mueller, 103 Mo. 634; State ex rel v. Jarrott, 183 Mo. 204; Rumsey Mfg. Co. v. Kaime, 173 Mo. 551. (2) A general agent is one who is authorized to do all acts connected with a particular trade, business or employment. 1 A. & E. Ency. Law (2 Ed.), p. 985, and authorities there cited. When an agency is shown to exist, the presumption would be that the agent's authority was general, rather than limited. Sharp v. Knox, 48 Mo. App. 169; Trainer v. Morrison, 78 Me. 160. Agency and extent thereof is to be gathered from all the facts and circumstances in evidence. Reynolds v. Railroad, 114 Mo. App. 674; Mitchum v. Dunlap, 98 Mo. 418; Nicholson v. Golden, 27 Mo. App. 132.

(3)   Authority to transact all the business of the principal confers power to sign and transfer negotiable paper. Bartley v. Rawley, 1 Swan (Tenn.) 295; Auldjo v. Dougall, 3 U. C. Q. B. (O. S.), 199.   An endorsement on a promissory note may be made by the agent of the owner, even though his authority was conferred orally.   And neither his agency nor his authority need appear on the instrument itself.   Bank v. Bank, 90 Mo. App. 205; Dawson v. Wombles, 111 Mo. App. 541; Goodyear v. Williams (Kan.), 85 Pac. 300; Mechem on Agency, sec. 373; Webster v. Wray, 17 Neb. 579; Mill Co. v. Bank, 52 Minn. 224.   (4)   A debtor is authorized to infer that an agent employed to negotiate a loan is empowered to receive payments of both principal and interest, from his having possession of the securities.   Whelan v. Reilly, 61 Mo. 568; 1 A. & E. Ency. Law (2 Ed.), p. 1026; Hatfield v. Reynolds, 34 Barb (N. Y.) 612; Crane v. Gruenewald, 120 N. Y. 274.   (5)   The principal is bound by the acts of his agent within the apparent authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing.   Johnson v. Hurley, 115 Mo. 513; Kinealy v. Burd, 9 Mo. App. 359; 1 A. & E. Ency. Law (2 Ed.), p. 989; Griggs v. Selden, 58 Vt. 561; Walsh v. Insurance Co., 73 N. Y. 5; Dodge v. McDonnell, 14 Wis. 553; 1 A. & E. Ency. Law (2 Ed.), p. 959; Rice v. Groffman, 56 Mo. 434; Baker v. Railroad, 91 Mo. 152; Hoppe v. Saylor, 53 Mo. App. 4; Willison v. Smith, 52 Mo. App. 133; Mechem on Agency, secs. 194, 195; Wharton on Agency, secs. 31, 32; 7 Cyc. 1031; White v. Genobles, 12 Rich. (S. C.), 311; Vinson v. Vives, 24 Law Am. 336; Stevens v. Hill, 29 Me. 133; Greve v. Schweitzer, 36 Wis. 554; Johnson v. Jones, 4 Barb. 373; Perkins v. Insurance Co., 4 Comst. 645; Bank v. Morton, 1 Hill 501; Bank v. Aston, 11 Wend. 87; Howe Machine Co. v. Snow, 32 Iowa 433; Sumner v. Saunders, 51 Mo. 89; Story on Agency, secs. 137-127, n. 2; Ingalls v.

Averitt, 34 Mo. App. 371; Bonner v. Lisenby, 86 Mo. App. 665; Franklin v. Insurance Co., 52 Mo. 465.

*Robert McPheeters* and *N. D. Thurmond* for respondent.

(1) It is immaterial whether Jolly held the genuine note or Penn retained the genuine and gave Jolly the forged note. The note which Huebler admits he gave Penn for Jolly was payable to the order of Jolly and Penn could not change the ownership by unlawfully indorsing Jolly's name. Hair v. Edwards, 104 Mo. App. 213. (2) The question of agency and the extent of the agency is one of fact. As a question of law the principal is liable for the acts of his agent when the agent's acts are within the scope of his agency. If respondent, Jolly, made Penn his agent for any specified purpose or led the appellant to believe he was his agent for such purpose, then respondent would be liable for the acts of Penn within the scope of his agency. (3) There is no evidence in the case that Jolly ever authorized Penn to collect this note. The whole evidence goes to show that Jolly did not want to collect it. He was doing all he could to keep his money at interest. Penn was making loans of his money to accommodate Penn's customers but not in the collecting business. (4) If Huebler had written to Jolly or directed Toedtmann to do so and requested him to send his note to this bank indorsed to Toedtmann, Penn would not have had the opportunity to defraud either of these parties. Ferneau v. Whitford, 39 Mo. App. 311; Cummins v. Hurd, 49 Mo. App. 139; Lee v. Clark, 89 Mo. 553. Note placed in hands of agent or attorney for collection does not authorize its sale. Quigley v. Bank, 80 Mo. 289. Authority to manage one's business such as buying and feeding stock does not authorize agent to sell. Newberry v. Durand, 87 Mo. App. 297.

JOHNSON, J. Action in equity to obtain the cancellation of a release of a deed of trust in the nature of a mortgage on the ground that the release was made

and entered on the margin of the record without authority from plaintiff, the owner and holder of the instrument, and of the promissory note, the payment of which it secured. Personal judgment for the amount of the debt against the makers of the note, and foreclosure of the lien of the deed of trust are included in the relief prayed for in the petition. Plaintiff prevailed in the trial court and the cause is here on the appeal, of defendants.

Material facts disclosed by the evidence are as follows: Plaintiff is a very old man living in Fulton, who invested his money in real estate loans. In 1892, he loaned twelve hundred dollars to a Mr. Smith, and received as security a deed of trust on eighty acres of land in Calloway county. When interest on this loan matured, it was paid by Smith to W. R. Penn, a real estate agent and loan broker in Fulton, and plaintiff received the proceeds of such payments from Penn. In September, 1897, Smith sold the farm to defendant Huebler for eighteen hundred and fifty dollars, with the understanding that Huebler should pay six hundred and fifty dollars in money and obtain a transfer of the loan in a way to release Smith from his obligation to plaintiff. Huebler was a stranger to plaintiff and Smith went with him to Fulton to assist in procuring a loan for him. They called on Penn at his office, stated their business and were informed by him that it was not necessary for them to see plaintiff as he (Penn) was plaintiff's agent. In answer to the suggestion made by Huebler's brother who was present, Penn said, "There is no use; I am his agent; I do all of his business, collect his interest and make his notes." Penn, acting for plaintiff, then agreed to loan Huebler twelve hundred dollars on the land, and prepared a negotiable promissory note for that amount dated September 10, 1897, due one year after date, payable to the order of plaintiff and bearing interest at the rate of eight per cent per annum payable annually.

Huebler immediately signed the note and left it with Penn. A deed of trust was prepared by Penn and given to Huebler who took it to his home in another town for the signature of his wife, and after execution and acknowledgment by both him and his wife, delivered it to Penn at Fulton, who, in turn, delivered it to plaintiff. But plaintiff was not given the note executed by Huebler. Penn fraudulently kept that in his possession and to satisfy plaintiff, made a duplicate note to which he forged the names of Huebler and his wife, and gave it to plaintiff as the original note. Plaintiff filed the deed of trust with the recorder of deeds, but after it was recorded it fell into the hands of Penn in some manner not disclosed, and thereafter Penn had possession of both note and trust deed, and plaintiff had nothing but the forged note. Penn released the Smith deed of trust on the margin of the record. In March of the following year, Huebler agreed to sell the land to a Mr. Calicott, who, in order to make payment of the purchase price, tried to secure a loan of twelve hundred and fifty dollars. Huebler and Calicott applied to plaintiff personally for the loan. Huebler testified: "Mr. Calicott and I went to Mr. Jolly to see him about the loan, if Mr. Calicott could get this money that I had. Mr. Jolly told us that he could not do anything for us; that Mr. Penn was transacting his business and was his agent, and that he could not do anything for us; for us to go to Mr. Penn; that he would do the business, and whatever he did was satisfactory to him. Q. What else did he say with reference to Mr. Penn collecting the interest and note? A. He told us that when it came due to go to Mr. Penn. Q. That interest was to be paid to Mr. Penn? A. Yes, sir."

They went to Mr. Penn who refused the loan and the proposed sale was abandoned. Huebler paid interest on the note as it matured for three years, and then quit paying. All of the payments were made to

Penn, the first one at his office, and the others by remittance. After the note became due, no demand was made for the principal, but Penn wrote some letters to Huebler of a severe tenor, threatening to foreclose if the interest were not paid. In 1902 Huebler made arrangements to have the loan carried by August Toedtmann of Hermann, and had his attorney write to Penn to forward the deed of trust and note to a bank at Hermann for collection. Penn endorsed on the back of the note "For value received, I hereby assign the within note to August Toedtmann without recourse," and signed plaintiff's name to the endorsement and forwarded the note and deed of trust to the Hermann bank. Toedtmann paid the full amount then due on the note to the bank and the proceeds were forwarded to Penn, who converted them to his own use. Toedtmann then endorsed and delivered the note to Robert Walker and delivered the deed of trust to him. Walker took the papers to the office of the recorder of deeds and released the deed of trust on May 8, 1902. In 1904, Huebler procured a new loan from defendants W. D. Townley and R. J. Bryan and gave them a deed of trust on the land to secure its payment. In 1905, Penn committed suicide on the eve of the discovery that he had perpetrated many crimes and frauds similar to that under consideration.

The facts we have stated are most favorable to defendant's side of the controversy. Plaintiff, in his testimony, denies that he employed or recognized Penn as his agent in the transaction at any stage, and states facts which tend strongly to support his contention that Penn was Huebler's representative. He testified: "Q. What were the circumstances under which the loan was made? A. Mr. Huebler and some other man —I don't know who it was—came to my house at the time—I am not so certain but what it was Mr. Smith —I don't know who it was—but Smith was connected

with it.    I had a note and deed of trust on this land from Smith—Smith either sent him or come with him. Huebler wanted to know if 1 would turn these over; what money Smith owed me and let him give a new deed of trust and note on the  place, and I told him I thought so—he wanted, I forget—$1,250 is all I have any recollection of now.    If I am not mistaken, he come twice; but I will not be certain about that.    Q.    After he applied for money what did you tell him then?    A.    I told him that I could, but that I would have to see something about the value of the place before I loan you that; but you can get it, I have no use for it and you can get it; and he says to me, he says: "I live a good ways and have my work to do, and I will make Mr. Penn my agent, and have him fix that all up and deliver them to you when I get the money, or deliver the whole thing to Mr. Penn.  . . .  I told him he could get the money, and in a day or two Dick Penn fixed up the papers.    Huebler said for him to do it and I consented."

Plaintiff is quite positive that he received the deed of trust from Penn and took it to the recorder's office, but is unable to tell how it became lodged in the possession of Penn.    He admits that Huebler and Calicott called on him, but beyond denying that he referred them to Penn or that he stated Penn was his agent, states nothing at all with reference to what occurred at that interview.

Calicott, who was introduced as a witness by defendants, said : "Mr. Huebler and I were on a trade, and if I got the money, was going to buy; went to Mr. Jolly and asked him about the money.    He said he didn't care how long it stood on the place, just so he got the interest.    I didn't have enough money and I could not get any more on the place and so could not make the trade.    He said that he could not do any business with me—that Penn was his agent, and he says 'Mr. Penn

does my business and collects my interest and attends to my business all through.' "

When the note matured, plaintiff did not care to collect the principal, but took the forged note to Penn's office and collected the amount of interest due and Penn indorsed the payment on the back of the note and returned the note to plaintiff. This was done every year, the last payment being indorsed by Penn on October 10, 1904. There is no room to doubt that Penn fraudulently concealed from plaintiff the fact that he had transferred the papers to Toedtmann, had received the principal of the note and that the deed of trust had been satisfied of record. To prevent the arising of any cause for suspicion, Penn paid the interest himself after the transfer to Toedtmann, and plaintiff had no knowledge of the deception practiced until after the death of Penn. The explosion that. followed that event brought the facts to light and in the excitement after the discovery, plaintiff exclaimed (so witnesses for defendant say) : "This is the way Penn has treated me. I trusted him with my business, he was my agent, and this is the way he has done me."

Bearing on the issue of agency, as well as on the question of the strength and accuracy of plaintiff's recollection, is the following portion of his cross-examination: "Q. During the time that Mr. Huebler got behind in his interest, you instructed Mr. Penn to stir him up? A. I don't remember. Q. Didn't you tell Mr. Penn to write to him and tell him you would foreclose the deed of trust if he didn't pay? A. I don't remember. Q. Didn't you say if he didn't pay that— A. (Interrupting) I don't remember. Q. You don't deny that you did tell Penn to write to Huebler? A. If I did, I don't recall it. Q. All your loans were made through Mr. Penn? A. Most of them were. Q. You collected your interest through Mr. Penn? A. Some, and some came to me. Q. The biggest portion was

paid you through Mr. Penn? A. I expect they did; yes, sir; I think so."

From the recitation of facts in the judgment rendered, it is evident the learned trial judge believed the note delivered by Penn to Jolly was a forgery. He found that interest had been paid to plaintiff to October 10, 1904, but made no finding on the issue of whether Penn was the agent of plaintiff or of Huebler in making the loan or in collecting the interest. The theory on which he decided in favor of plaintiff appears in the following extract from the judgment:

"The court doth further find that one J. R. Penn, about the — day of April, 1902, falsely and fraudulently indorsed the name of S. T. Jolly on either the said original note, given by said Fred E. Huebler to Samuel T. Jolly, as aforesaid, or on a counterfeit and forged imitation of said note, and did sell the same to one August Toedtmann, who subsequently assigned and transferred same to one Robert Walker, and that Robert Walker on the eighth day of May, 1902, duly presented same to the recorder of Calloway county, Missouri, for cancellation, and the said Robert Walker entered satisfaction of said note and deed of trust upon the margin of the record thereof in said Recorder's office; that said cancellation of said note and satisfaction entered thereon was without authority from said S. T. Jolly, and the same is without effect and void as to the rights of the said S. T. Jolly, the plaintiff."

This being an equity case, issues of fact as well as of law are before us for review. We approve the findings of fact made by the trial judge, believing as does he, that the indorsement of the note to Toedtmann was without the knowledge of plaintiff and made in execution of a criminal purpose, but we find it important to state the result of our solution of issues of fact which were warmly contested by the parties, but not mentioned in the findings of fact.

We are of opinion that Penn was agent of plaintiff duly authorized to conduct the transaction of making the loan to Huebler. Plaintiff's testimony relating to this issue, though no doubt honestly given, fails to impress us. While he speaks positively about the most important facts his memory relating to incidents of less importance is defective. This is not surprising, considering his great age and the length of time that elapsed between the events about which he testified and the trial. Not only does the testimony of Huebler and his witnesses bear the stamp of greater accuracy, but it is strongly supported by facts and circumstances about which there can be no real contention. Plaintiff and Penn lived in the same city, were well acquainted, and for years the large part of plaintiff's loan business had been entrusted to and transacted by Penn. In permitting Penn to conduct the negotiations with Huebler, to prepare the papers and collect the interest, plaintiff pursued his usual course of business. On the other hand, Huebler was a stranger to both Penn and plaintiff, was introduced by Smith who transacted his business with plaintiff through Penn, and when assured that Penn had plenary authority from plaintiff, it was only natural that he should conclude it was useless for him to interview plaintiff. Neither necessity nor convenience compelled him to employ an agent through whom to pay interest or principal. If he came to Fulton, he could transact business with plaintiff as well as with Penn, and if he made remittances, it would not have been more convenient to send them to Penn than to plaintiff. Other circumstances are worthy of notice. Not only did Penn collect the interest on this loan as on others made by plaintiff, but he satisfied the Smith deed of trust of record, and, either with the consent of plaintiff or by his neglect, was suffered to obtain and keep the Huebler deed of trust. We are not saying that these facts and circumstances either

singly or in combination are enough in themselves to establish the fact the Penn was the agent of plaintiff, but we do say they tend to support the evidence of defendants and add enough to its weight to give it a clear preponderance over the evidence of plaintiff.

We recognize the rules that throw the burden of proof on defendants to establish the fact of the existence of such agency and require other proof of that fact than the declarations of the alleged agent, and we find that defendants have fully satisfied the rules. In giving credit to the testimony of Huebler, we adopt his version of the interview he had with plaintiff in March following the making of the loan and about which the recollection of plaintiff seems to be wholly deficient. On that occasion, plaintiff stated to Huebler and Calicott that Penn was his agent in all loan matters and directed Huebler to pay interest to Penn when it became due. This statement in itself is convincing proof of the fact of agency. The scope of that agency will be discussed later on. The delivery to Penn of the note and deed of trust duly executed was a delivery to plaintiff, his principal, and if through the fraud of the agent the note failed to reach the hand of plaintiff, but instead, a spurious note was palmed off on him by his agent, Huebler should not be held responsible for the consequences of that fraud. Plaintiff must bear the brunt of it, since it was a wrong done by his agent in the course and scope of the employment. Certainly, after being informed by plaintiff that Penn was authorized to collect the interest, Huebler was justified in assuming that Penn had rightfully obtained possession of the note and deed of trust and was the proper person to receive payments of interest. We agree with plaintiff that neither the possession of the papers nor the declaration of plaintiff to Huebler clothed Penn with authority to sell the note and indorse it with the name of plaintiff, the payee. These fraudulent acts did

not operate to transfer the legal title to Toedtmann, the purchaser, because the sale and indorsement of the note were outside the apparent as well as the real scope of his authority. But it does not follow that these acts were wholly without effect. After the maturity of the note, Huebler was entitled to indulge in the presumption that Penn was authorized to collect principal as well as interest. The rule is settled that a debtor is authorized to infer that an agent employed to negotiate a loan is empowered to receive both the principal and interest from his having possession of the securities. Not only did Penn hold continuous possession of the securities for a period of years after the debt became due, and collect interest apparently with the authority of plaintiff, facts known to and acted upon by Huebler, but all that time Huebler had the unrecalled instruction of plaintiff to transact with Penn all business connected with the loan. The collection of the principal thus fell within both the actual and apparent scope of the agency and though the note was made payable to the order of plaintiff, authority to collect it could be and, in fact, was conferred on Penn without indorsement of the note. Had Huebler called at the office of Penn, found the unindorsed note in his possession, paid to him the amount due thereon and received the note, that would have constituted a payment to plaintiff, and the subsequent misappropriation of the proceeds by Penn would have been plaintiff's loss. In effect, this is exactly what was done. Huebler exercised his unconditional right to pay his past due note. Payment could be made without the payee indorsing the note. The indorsement forged by Penn was void, Toedtmann acquired no legal title under it, but as Huebler paid the amount due to an agent authorized by plaintiff to receive such payment and the securities were surrendered by the agent who had them in his possession, such payment to the agent was payment to the principal, and the loss resulting from the agent's

dishonesty must be borne by the principal. Authorities in point are as follows: Sharp v. Knox, 48 Mo. App. 169; Whelan v. Reilley, 61 Mo. 565; Reynolds v. Railroad, 114 Mo. App. 670; Quigley v. Bank, 80 Mo. 289; Dawson v. Wombles, 111 Mo. App. 532; Bank v. Bank, 90 Mo. App. 205; Webster v. Wray, 24 N. W. (Neb.) 207; Bartley v. Rawley, 1 Swan (Tenn.) 295; Mill Co. v. Bank, 53 N. W. (Minn.) 1061; Crane v. Gruenewald, 24 N. E. (N. Y.) 456; 1 A. & E. Ency. of Law (2 Ed.), 1026; Mechem on Agency, sec. 373.

What we decided in Hair v. Edwards, 104 Mo. App. 213, cited by plaintiff, is not in point. It is true that the mere possession by a person other than the payee of an unindorsed negotiable promissory note made payable to order is not prima-facie evidence of ownership. It is not claimed by defendants that Penn held himself out as the owner of the note but that he was the agent of plaintiff and, as such, appeared to hold possession of the paper with authority to collect it. It follows from what we have said that since plaintiff has been paid in full, he has no cause of action, and the judgment must be reversed. All concur.