## WILLIAMS et al., Appellants, v. HUSKY.

### Division Two, December 22, 1905.

1. **EQUITY: Refusal to Find Facts.** The refusal of the chancellor to make a finding of facts, when requested, is not reversible error on appeal. A finding of fact in an equity case is not binding on the appellate court.

2. **REFORMING DEED: Delivery: Omission: Record: Subsequent Correction.** A deed executed and recorded but defective because omitting the township and range in which the land lay, and afterwards corrected on its face, but not subsequently recorded or delivered to the grantee, is not a valid deed, because never delivered. And the bringing of a suit by the grantee to have it reformed would be unnecessary if it had been delivered after being corrected.

3. ———: ———: **Declaration of Law.** And in such case it is immaterial whether or not the court refused a requested declaration of law to the effect that the recording of the original deed by the grantor constituted delivery thereof.

4. **DEED: Delivery Essential.** The delivery of a deed is essential to the transfer of the title to the land therein described.

5. **REFORMING DEED: Consideration Must be Shown.** The grantee, in order to prevail in a suit asking that a deed be reformed so as to correctly describe the land, must show by the preponderance of the evidence that he complied with its expressed terms and conditions, to-wit, paid or performed the consideration of "one dollar and maintenance of the grantors during life."

6. ———: **Res Adjudicata: Privies.** A judgment against the defendants, brought by the grantee of a deed against the grantor and a subsequent vendee, to have the deed reformed so as to

correctly describe the land, is *res adjudicata* as to the defendants and their privies, whether the privies are parties or not. So that such judgment is a bar to a subsequent suit by the same plaintiff against the grantee of the defendant vendee in that suit, to have the same deed reformed, although the defendant in the last suit was not a party to that suit.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside, Judge.*

AFFIRMED.

*Wm. P. Elmer* and *Thos. M. & Cyrus H. Jones* for appellants.

(1) The court erred in refusing to make a finding of facts when requested by plaintiffs. Sec. 695, R. S. 1899; Hamill v. Talbott, 72 Mo. App. 22. (2) The court erred in not finding the facts as requested and in refusing declarations of law 2 and 3. (a) The answers of Williams and Anderson in 1895 and of defendant in this trial admitted the execution and delivery of the deed. (b) Recording deed by Williams and entering into performance of contract by plaintiffs make a delivery and acceptance. Coulson v. Coulson, 180 Mo. 715; McReynolds v. Grubb, 150 Mo. 362; Kingman v. Buggy Co., 150 Mo. 310; Peters v. Berkemeier, 184 Mo. 402. (c) The admission of delivery of the plaintiffs' deed in defendant's answer estops him to deny same by testimony. Call v. Mall, 89 Mo. App. 390. (d) The acts and declarations of Williams after the justice corrected the deed constituted a delivery of same after correction. Citations supra (b); Rumsey v. Otis, 133 Mo. 95. (3) Courts of equity will grant relief to parties claiming under defective conveyances against the vendor or subsequent purchasers with notice or knowledge. Pike v. Martindale, 91 Mo. 280; Atkinson v. Dixon, 70 Mo. 393. (a) Defendant's answer admits such knowledge in setting up estoppel *in pais*. (b) Anderson's answer admitted same. (c) Notice proven by witnesses

and not denied by defendants. (4) Failure to perform consideration in a deed will not defeat the same as a conveyance. Gains v. Anderson, 156 Mo. 670; Studdard v. Wells, 120 Mo. 29. (a) The right to demand a performance of the consideration before correcting the deed was a personal defense of Morgan Williams. 6 Am. and Eng. Ency. Law (2 Ed.), 506. (b) It did not run with the land as a covenant. 8 Am. and Eng. Ency. Law (2 Ed.), 134. (c) Williams had no vendor's lien enforcible upon a consideration to "support and maintain" him during life. 29 Am. and Eng. Ency. Law (2 Ed.), 743-4-5; Winn v. Invest. Co., 125 Mo. 529. (d) Therefore, defendant had no right of subrogation as vendee. 27 Am. and Eng. Ency. Law (2 Ed. ), 222. (e) Nor if he was warned not to purchase or was guilty of fraud. 27 Am. and Eng. Ency. Law (2 Ed.), 241. (f) Even if Williams could demand a performance of the consideration as a condition precedent to a reformation of the deed, the performance in part and offer to perform in whole and refusal to accept would be all required of plaintiffs. 26 Am. and Eng. Ency. Law (2 Ed.), 41. (g) The burden of proving a failure of consideration was upon defendants. 6 Am. and Eng. Ency. Law (2 Ed.), 765. (5) Defendant was not a party of record to the former suit; hence the judgment is not *res adjudicata.* He was under no obligation to protect Anderson. He took no part in the litigation that would bind him. He said he was not a party. State ex rel. v. St. Louis, 145 Mo. 567; Landis v. Hamilton, 77 Mo. 565; Koontz v. Kaufman, 31 Mo. App. 397; 24 Am. and Eng. Ency. Law (2 Ed.), 735. (6) Defendant was not a privy to Anderson, his interest being acquired before the institution of the suit. Freeman on Judgments, sec. 162; Henry v. Woods, 77 Mo. 281.

*J. B. Harrison* for respondent.

The deed made by Williams to appellants was void for uncertainty, and being a voluntary act of Williams,

when his attention was called to the same he corrected the same, but never delivered the deed as corrected, and the evidence shows that he never intended to make a delivery of the deed, as the appellants had already refused to accept the terms of said deed, and Williams repudiated the contract, and a complete estoppel was adjudged on the rendition of the judgment between appellants and Williams, and the adjudication is a complete estoppel to appellants. Bieman v. Crecelius, 135 Mo. 386; Carmody v. Hanick, 85 Mo. App. 659; Henry v. Woods, 77 Mo. 280; Foote v. Clark, 102 Mo. 394; Crispen v. Hannavan, 50 Mo. 415. "Privies are those who have mutual or successive relationship to the same right of property or subject-matter as voluntary grantees." Authorities supra. "When a description in a deed is hopelessly uncertain, the conveyance is void, and no title passes under it." Campbell v. Johnson, 44 Mo. 247; Vasques v. Richardson, 19 Mo. 96; Bell v. Dawson, 32 Mo. 79; Ford v. Unity Church, 120 Mo. 498; Boardman v. Reed, 6 Pet. (U. S.) 345; 4 Am. and Eng. Ency. Law (2 Ed.), 802. The deed after the correction by the scrivener was never delivered to grantees. (a) The evidence affirmatively shows it was never delivered. (b) The deed was retained by grantor, and no intention to deliver or acceptance by grantees is shown. Tyler v. Hall, 106 Mo. 313; Pitts v. Sheriff, 108 Mo. 110. (c) Evidence shows grantor remained in possession of premises and grantees paid him rents for said land, which rebuts any claim of delivery of deed or acceptance of same by grantees. 18 Am. and Eng. Ency. Law (2 Ed.), 411; Parker v. Raymond, 14 Mo. 535; Walker v. Harper, 14 Mo. 535; Piene v. Rollins, 60 Mo. App. 497.

BURGESS, P. J.—The petition in this case is in two counts: one in equity, to correct a mistake in the description of a deed to certain lands attempted thereby to be conveyed by Morgan Williams and Elizabeth

Williams, his wife, to plaintiff; the other is in eject-
ment against the defendant for the possession of the
land which was intended to be conveyed.

The answer of defendant admits that Morgan Wil-
liams and wife attempted to execute a deed to plain-
tiffs as alleged in their petition, and then pleads a gen-
eral denial.  For a further defense the answer avers
that the said conveyance by Morgan Williams and wife
was a voluntary act and made for the purpose of de-
frauding the creditors of said Williams; that the terms,
conditions and consideration were never   accepted by
the plaintiffs and that they never entered upon the per-
formance of any part of the terms of said considera-
tion; that the plaintiffs abandoned all rights and in-
terests, of whatever nature, they had in and to said
premises; that by reason of their said abandonment
and by their acts, conduct and statements, the defend-
ant was induced to purchase said lands from one John
Anderson who had purchased the same from Morgan
Williams, which sale was evidenced by a warranty deed
dated April 19, 1894.  It is also alleged that the deed
from Anderson to Husky was dated November 13,
1894; that plaintiffs never had possession of said lands;
that the creditors of Morgan Williams, after the exe-
cution of said deed by him, seized and sold, under an
execution against him, all of said lands intended to be
conveyed, except what was claimed by Williams as ex-
empt from sale under execution, being the west half of
the northeast quarter and the northeast quarter of the
northwest quarter of section 25, township 36, north,
range 8; that plaintiffs wholly abandoned and rescinded
their contract as expressed in said deed, because said
deed had failed to defeat the creditors of said Morgan
Williams and because eighty acres of said land was sold
under execution to pay the debts of Williams; that said
deed was affirmed and held to be good by the circuit
court of Phelps county, Missouri; that the plaintiffs,
nor either of them, since the said deed was executed,

complied with the terms, stipulations or consideration expressed therein, nor did they take possession or hold said premises under said deed; that thereafter the plaintiffs represented and stated to one John Anderson that they had abandoned all right and interest and claims of every nature that they had acquired in and to said lands by virtue of the deed of conveyance thereto made by said Morgan Williams and wife; that they claimed no title whatever by reason of said conveyance and that they did not intend to take possession of said premises under said deed; that by reason of said representations and statements John Anderson was induced to believe that he was free to purchase said land from Morgan Williams and wife; that said Anderson, relying upon said statements and representations, did purchase said real estate and that said Morgan Williams and wife did make and execute to him a general warranty deed, and said Anderson did pay the sum of $—— in consideration of said deed. The answer further avers that the defendant purchased, in good faith, all the right, title and interest of the said John Anderson in and to said lands for the sum of $——, which he fully paid. It further avers that by reason of the inducements, representations and acts of plaintiffs aforesaid, of all of which he was informed, he was induced to believe and did believe that at the time he purchased said lands from said Anderson, the plaintiffs had wholly abandoned any claim, title or interest they might have had in and to said real estate by virtue of the deed mentioned in plaintiffs' petition; that plaintiffs, by reason of their laches, representations and conduct, are estopped and barred from bringing this suit, and also because the same issues and the same nature of proceedings were commenced by plaintiffs in the circuit court of Phelps county, at the September term thereof, 1895, wherein all of these plaintiffs were parties plaintiff and Morgan Williams and John Anderson were defendants, and that this defendant was at that time

and long prior thereto privy to said conveyance; that said cause of action was tried before C. C. Bland, then judge of the circuit court of Phelps county, upon the same pleadings and issues as in the present cause of action, being a bill in equity to set aside the same deed as is now set forth in plaintiffs' petition, and the answer thereto being the same character of defense as herein set forth as to the laches and ten-year Statutes of Limitations, such answer being made by said Morgan Williams and John Anderson, and that said defendant herein was then and there in court and assisted in employing J. B. Harrison as attorney in making said defense and acted in conjunction with defendants Williams and Anderson in all of said proceedings, and that the said C. C. Bland, judge as aforesaid, sitting as chancellor in said cause, after hearing all the evidence adduced on the trial of said cause, decreed and adjudged that said cause be dismissed and that plaintiffs have and recover nothing by their bill in equity, and that defendants have and recover of and from plaintiffs their costs in that behalf expended, and that said judgment remained in full force and effect. The answer then pleads the Statute of Limitations.

Plaintiffs made reply to said answer, denying each and every allegation therein contained.

The cause was tried by the court, who found for the defendant, dismissed the petition, and rendered judgment for the defendant and against the plaintiffs for costs. Plaintiffs appeal.

It appears from the evidence that Morgan Williams owned the land in question, and that on the 25th day of January, 1890, he and Elizabeth, his wife, intended and attempted to convey to plaintiffs, by deed of general warranty, the northeast quarter and the northeast quarter of the northwest quarter of section 25, township 36, north, range 8, in said county, and to that end executed and placed of record a warranty deed for said lands, but by mistake of the scrivener the num-

ber of the township in which the land lay was omitted
from the deed. The consideration expressed in the
deed was one dollar, love and affection, and mainten-
ance of the grantor and his wife during their lives.
Thereafter Morgan Williams took the deed from the
recorder's office and went before the officer who had
taken the acknowledgment and had inserted in the deed
the number of the township, but the deed was never
thereafter delivered to the plaintiffs. Said Elizabeth
Williams died February 13, 1890, and Morgan Williams
thereafter married the mother of John Anderson and
subsequently conveyed to said Anderson 120 acres of
said land, who recently thereafter conveyed the same
to the defendant. The remaining eighty acres was sold
at sheriff's sale, August 6, 1891, under a judgment
against Morgan Williams, and purchased by John G.
Hutchison, and the defendant, by successive convey-
ances, acquired all of the right and title that said Hutch-
ison had in and to said land. Husky and Anderson both
knew of the deed to plaintiffs and of the error therein.
In 1895, plaintiffs filed suit in the Phelps Circuit Court
against Morgan Williams and John Anderson for a cor-
rection of the deed from Morgan Williams and wife to
plaintiffs, Anderson being made a party to the suit be-
cause of his having, in the meantime, purchased the
land from Morgan Williams. Upon a hearing of the
case, the court rendered judgment for the defendants
and plaintiffs' bill was dismissed.

Plaintiffs read in evidence a record of the deed
from Morgan Williams and wife to them, as described in
the pleadings, the consideration for said deed, as recited
therein, being one dollar, love and affection, and main-
tenance during life. This deed was acknowledged be-
fore John M. Fleishman who testified as a witness that
he lived in Phelps county, knew Morgan Williams
and wife, and that he was a justice of the peace
in 1890 and took the acknowledgment of the
above deed, which was executed by Morgan Wil-

liams and wife; that there was a mistake in the deed; that the township and range were omitted; that Morgan Williams said the dollar he had, and the rest he was not afraid of getting; that Williams made the latter statement at the time the deed was made. Witness said, in answer to a question whether Morgan Williams ever brought the deed back and showed it to him: "He came to my house and said there was a mistake and he wanted me to come down and correct it, and I went down to his house and corrected it. It was several days, may be a week, after the deed was drawn when he came back and said there was a mistake and he had me to come back and correct the deed." Witness testified that he did correct the deed by inserting the number of the township and range, and also that Morgan Williams and wife and David Williams and his wife lived on the opposite end of the farm, while John Voss, Morgan William's son-in-law, lived at the other end; that David Williams lived on the farm till his mother died and his father married again; that John Voss and David Williams tilled the farm after the deed was made, and that after Mrs. Williams died they moved into the house with Morgan Williams.

S. A. Brookshire, a witness for plaintiffs, testified in substance that he heard about the making of the deed in question; that William Husky and witness were talking about trading for the place; that witness told him he could do as he pleased, but that whenever Husky made the trade he would, in the opinion of witness, be also buying a lawsuit, as he understood the heirs had a deed to the land; that Husky remarked to him that he wanted the place, and he was going to have it even if he had to pay the heirs over and above for the land. Witness did not remember the date when this conversation took place, but said it was awhile before Husky traded for the land and after Anderson got it. He also heard Alfred Smith tell Husky that they offered the place to him, and that he was afraid to buy it; that

Husky replied he was going to risk it.    Witness also stated that Voss and David Williams lived on the farm some four or five years after the deed was made and were living there when Mrs. Williams died; that Robert Williams and Nathan Riley sent their girls to take care of the old lady as long as she lived.    Witness further said that Morgan Williams told him that he had no reason to complain; that he was getting as good as he deserved and probably a little better.    Witness said John Voss lived on the place before the deed was made, and he supposed Voss paid rent.

James Patterson, another witness for plaintiffs, testified as follows:    ''I knew Morgan Williams intimately since 1888.    I had a conversation with him; it was just before he married the second time.    He said the children had performed their contract, and the reason he wanted to marry again was not because they did not treat him right, but that he was lonesome.    He had plenty to eat and wear and was comfortably fixed in his house.    He visited more than he did before his wife died.''    Witness, being asked if Morgan Williams said anything to him about making the boys quit the performance of their contract, answered:    ''Yes, sir; after it was over with, he said it was not the boys' fault at all; that he had married and had come home, and made John Voss get out of the house and paid him something for the possession of the house and part of the ground.    He (Voss) went into a house on the opposite side of the farm from where he lived.    He (Williams) said he wanted a home for himself in his old age and he wanted the boys to have that home and for that purpose he had made the deed.''

Thomas Huffman, witness for plaintiffs,    stated that he knew William Husky and that he lived on the same farm owned by Morgan Williams; that he had had a conversation with Husky prior to the time he bought the farm, in which conversation he told Husky that the farm had been offered to him, but that he would not

buy it because he did not think the title good; that Husky said it was cheap and he was not afraid of the title, and that he would just as soon go into a lawsuit on the wrong side as on the right, for if he had plenty of money he would come out winner. Witness said that Anderson had been trying to sell him the farm, and that he told Husky he would not buy it.

Charley Smith testified that he knew Morgan Williams and John Anderson; that Anderson bought the place from Williams and rented it the first year he was there; that he heard Anderson say several times that the heirs had title to the place. Witness said Anderson made this statement before he had purchased the land.

Henry Smith, another witness, testified that he knew William Husky, and that in a conversation with Husky regarding the deed held by Morgan William's children he said that he was afraid of it, and that Husky said he was going to Rolla to see a lawyer about it; that this conversation occurred about a week or ten days before Husky bought the place.

W. R. Williams, one of the plaintiffs, testified that Morgan Williams lived on the land for forty years. Being asked if he ever had any conversation with Husky regarding the deed before the latter had purchased the land from John Anderson, he replied: "Yes, sir; I talked with him several times. There was one time in particular, when he was a merchant at Lecoma and I was in the store, and he said, 'I always wanted the place,' and I said, 'Whoever buys the land buys a lawsuit, as we own the place and intend to have it.' He said, 'Anderson is wanting to trade me this land and I want to know if there will be any difficulty if I trade for it,' and I said, 'If you trade for it, you will trade for a lawsuit;' and he got up and started away and said, 'I will have nothing more to do with it.'" Witness stated that his mother died February 13, 1890, and his father, on January 11, 1898; that his father, mother, brother and wife, and sister and her husband were living on the

farm at the time the deed was made; that one of his daughters stayed with his mother and waited on her for about a year before and up to the time of his mother's death; that his father was well taken care of and got all he desired for his comfort and was given part of the proceeds of the farm; that he, witness, paid his father the one dollar mentioned as part of the consideration in the deed. On cross-examination, witness stated that he did not know where the deed was; that he asked his father about it after Mr. Fleishman made the correction, and he replied that the deed was worn out. Witness further stated that he never got or had possession of the deed or the land; that his father, after having the deed recorded, took it back and kept it.

David Williams, another of the plaintiffs, testified that he lived on the farm at the time the deed was made, in 1890, and until the fall of 1892; that John Voss and wife lived thereon one year after the deed was made, and Voss left because he could not get along with the old man after his second marriage; that his father married the mother of John Anderson, the grantee in the second deed; that his father would never come to his house except when mad, and that he left the farm in 1892, leaving one-third of the corn crop in the field for his father.

Plaintiffs then offered in evidence the separate answer of John Anderson in the case of W. R. Williams and others against Morgan Williams and John Anderson, tried at the September term, 1895, of the circuit court of Phelps county, which answer, in substance, admitted that Morgan Williams and wife, Lorina P., executed and delivered the deed to him (Anderson) April 19, 1894, and denied each and every other allegation in the petition; averred that at the time of the conveyance to him, plaintiffs induced him to believe they had abandoned all their rights and interests by reason of the conveyance from Morgan Williams and wife to plaintiffs, and that they had abandoned the premises and

permitted him to take possession of the same; that he fully paid Morgan Williams ——— dollars in good faith for said land; that he had sold, and transferred and delivered all of his right and interest in and to said premises to Wm. Husky.    The answer then asked that his deed be adjudged a lien on the premises.

The defendant, to sustain the issues on his part, read in evidence the record in the suit brought by these same pláintiffs against Morgan Williams and John Anderson in the circuit court of Phelps county at the September term, 1895, of said court, for the purpose of correcting this same deed which is sought to be corrected in this suit.    The record showed that the case was thereafter heard and determined adversely to the plaintiffs, and judgment rendered in favor of the defendants and against the plaintiffs for costs, and dismissing the petition.    Defendant introduced and read in evidence the record of the warranty deed from John Anderson and wife to him (Wm. Husky), dated November 13, 1894, conveying the west half of the northeast quarter and the northeast quarter of the northwest quarter of section 25, township 36, north, range 8, west, in Phelps county, the consideration expressed being sixty dollars and exchange of property; also a deed from Morgan Williams, by sheriff, to John G. Hutchison, dated August 6, 1891, which was issued upon a judgment rendered by the circuit court of Phelps  county, and conveyed the east half of the northeast quarter of section 25,   township 26, north, range 8, west, in Phelps county; also a record of a warranty deed from Ellen Packard to William Husky, dated May 29, 1895, conveying the southeast quarter of the northeast quarter of section 25, township 36, north, range 8, west.

Defendant then introduced  as  a  witness  C.  C. Bland, who testified, in substance, that he was judge of· the circuit court of Phelps county in 1895 and tried the case of W. R. Williams and others against Morgan Wil-

192 sup—35

liams et al.  Being asked if he could state the substance of the testimony of W. R. Williams as to his having paid anything in consideration of the deed that his father, Morgan Williams, executed, answered as follows: "There was no testimony whatever on that point."  He was also asked if he could remember the testimony of J. D. Williams as to his occupying part of the premises, and witness replied: "The testimony of Mr. Williams and Mr. Voss, as I remember it, was substantially this: They were tenants of Morgan Williams and had been for some years.  Did not know how long prior to the execution of the deed; but after the execution of the deed, or as long as they remained on the farm, the same relation continued.  In other words, there was no change in the relation of Morgan Williams and the grantees in this case in relation to the farm.  The testimony was, further, that none of them had offered in any respect to perform the conditions of the deed and that none of them had set up any claim against Morgan Williams."  Witness being asked to detail the substance of the testimony of Morgan Williams as to the deed and as to the performance or abandonment, by the heirs, of their part of the contract, stated as follows: "Morgan Williams testified in substance that he signed a note as security for one of the Meltons, a note of $500 or $600, and he believed he would have to pay it and wanted to make a provision for the maintenance of himself and his wife through the rest of their lives, and he made this deed to his children, or undertook to make this deed, on condition they would maintain him as expressed in the deed.  He made the deed with that in view and brought it to town and had it recorded.  The clerk called his attention to the omission in the deed, the township and range left out, and he took the deed out of the office and took it home and never delivered it to anybody.  That his son was running the place and continued to run it as he did before he made the deed.  That his son-in-law did the same thing.

That both finally moved off the place, of their own free will and accord, and he had to get another renter to cultivate the farm. Outside of the rents he received, none of children ever contributed a dollar for his support. That some of his grandchildren stayed at his house and helped to do the housework and take care of his wife before and after the execution of the deed. That he paid the doctor and grub bills himself, and bought and paid for all the supplies he ever received.''

John Anderson, witness for defendant, testified that he was co-defendant with Morgan Williams in the suit instituted in 1895 by the plaintiffs; that he bought the 120 acres of land described in the petition, paying $50 in cash and giving his note for $125 at eight per cent interest for seven years, but paid note before it became due; paid note he owed Burt Long, and paid two store bills to Husky and Comstock. Had a conversation with Robert Williams before he bought the place. Witness further said: ''I was thinking that the claim against the place spoilt the old man's right to it, and I says to him: 'Robert, the place is worth more money than that, and why don't you go to work and lift the judgment against it and take the place?' and he says, 'I am done with the place. I put David and Voss on the place to help the old man, and he had to help them, and I am not going to have anything to do with it;' and he said, 'You go ahead and do that yourself, as you are as much interested in the place as I am, and you can go ahead and buy the land yourself and let them move to town if you want to.' '' Witness said he told Robert Williams that he (witness) had taken the old man to take care of him for his land, and that he agreed to pay him so much; that at the time witness was sued he had sold the land to Wm. Husky, who was in possession of it; that he (witness) bought the land in the spring of 1894 and sold it to Husky in November, 1894; that he paid Morgan Williams $875 for the farm, and got in place of it from Huusky 160 acres and about $64 in money, and that the

value of the farm he got from Husky was $1,600; that he paid the note Husky signed with him.

William Husky testified in substance that he bought the land from John Anderson and that he learned before he bought the land that Hutchison had a claim against it; had a conversation with the heirs before he bought it, and was in possession at the time suit was brought against John Anderson and Morgan Williams; that Morgan Williams and Anderson were in possession of the land until he bought it, and that Voss and David Williams were in possession of part of it from 1891 to 1893.

S. A. Null testified in substance that he was present at the trial in 1895; that at said trial Judge Bland asked W. R. Williams if he had contracted for this land and Williams stated that he had not paid any money, but witness could not remember all of the statements. Witness thought Taylor Williams was on the witness stand and that the latter said he had not paid the dollar, but that he had the dollar to pay when the deed was rectified.

Albert Anderson, in substance, testified that he had a conversation with Robert Williams about a year before John Anderson bought the farm. Witness was there on a visit, and Robert Williams said the old folks would have to be cared for in some way, and witness then said, ''Why don't you go in there and buy the place and take care of them?''

At the conclusion of the testimony plaintiffs asked the court to make a finding of facts, which the court declined to do, and plaintiffs saved an exception. Plaintiffs then asked the court to make a number of declarations of law, which were, in substance, that the finding and decree must be for plaintiffs in accordance with the prayer of their petition, which the court refused to do, and plaintiffs excepted.

It is insisted by plaintiffs that the court committed reversible error in refusing to make a finding of

facts when requested to do so by them.  By section 695, Revised Statutes 1899, it is provided that, "upon the trial of a fact by the court, it shall not be necessary for the court to state its finding, except generally, unless one of the parties thereto request it with the view of excepting to the decision of the court upon the question of law or equity arising in the case, in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law."  Under the practice in this State, equity cases are practically tried *de novo* in the appellate courts and the evidence reviewed, and the question is, should a judgment be reversed because of the failure of the trial court to make a finding of fact when requested to do so by one of the parties?  "This court, while deferring somewhat to the conclusions of fact reached by the trial courts, has not been bound by its findings of fact nor its conclusions of law thereon, but has ever exercised a supervisory control over both.  In order that the evidence in cases of equitable jurisdiction may be reviewed on appeal, the rules of this court require that the whole of the evidence shall be embodied in the bill of exceptions."  [Blount v. Spratt, 113 Mo. l. c. 54.]    If, as has been said, an equity case will be heard *de novo* in this court, it is clear that, while deferring somewhat to the findings of fact made by the trial court, this court is not bound thereby, but has the right to review the facts and form its own conclusions respecting the same. It does not necessarily follow that the trial court committed reversible error in refusing to find in writing the facts disclosed by the evidence; for if such findings be not binding upon the appellate court, it must logically follow that the trial court did not commit reversible error in declining to make such findings of fact.

The evidence tended to show that the deed from Morgan Williams and wife to plaintiffs was never delivered to them, or to any person for them, after it was

corrected so as to embrace the land in question. Plaintiffs brought a former suit against Morgan Williams and John Anderson, his grantee, to have this same deed corrected so as to embrace the land in controversy, which resulted adversely to plaintiffs; and, now, for the same purpose, they prosecute this suit, which would have been entirely unnecessary if the original deed had been delivered after it was changed by inserting the township and range. It is, therefore, immaterial whether the court made a finding of facts or not, or refused the second declaration of law, asked by the plaintiffs, to the effect that the recording of the original deed by Morgan Williams constituted a delivery thereof, since that deed passed no legal title to the land. Nor is it true, as contended by plaintiffs, and as stated in the third declaration of law asked by them, that the acts and statements of Morgan Williams, at the time he had the deed corrected, show such an intent on his part of delivery as to constitute a good and sufficient delivery of said deed after it was corrected. Whatever may have been the intent of the grantor with respect to the delivery of the corrected deed, it is clear that he never did deliver it, and it could only have taken effect from the time of its delivery. [Fontaine v. Boatmen's Savings Institution, 57 Mo. 552; Saunders v. Blythe, 112 Mo. 1.] The delivery of the deed was essential to the transfer of the title of the land therein described. It was the final act, without which all other formalities were ineffectual. [Ebersole v. Rankin, 102 Mo. 488; Crowder v. Searcy, 103 Mo. 97; Allen v. DeGroodt, 105 Mo. 442; Hall v. Hall, 107 Mo. 101; Cravens v. Rossiter, 116 Mo. 338; Rumsey v. Otis, 133 Mo. 85.] And if the deed was not delivered, it was of no more effect than if not signed. [Turner v. Carpenter, 83 Mo. 333; Hammerslough v. Cheatham, 84 Mo. 13.]

In order to entitle plaintiffs to a decree correcting the deed from Morgan Williams and wife to them, it devolved upon them to show by a preponderance of the

evidence a compliance upon their part with the terms and conditions of the deed as expressed therein, the payment of the sum of "one dollar . . . and maintenance during life" of the grantor and his wife. The evidence upon this question was conflicting, but preponderated in favor of the defendant. This conclusion is in accord with that of the trial court, which we think was fully justified by the evidence.

There is one other point made by the defendant which we think precludes plaintiffs' recovery in this action, and that is, that they are bound by the judgment of the court in favor of the defendants in the action brought by them against Morgan Williams and John Anderson for the purpose of having the same mistake in the deed in question corrected. While defendant Husky was not a party to that suit, he acquired title to the land from John Anderson, who held under Morgan Williams, and was, therefore, their privy; hence, the judgment as to him, as well as to Williams and Anderson, was *res adjudicata*. In the case of the State ex rel. Subway Company v. St. Louis, 145 Mo. l. c. 567, it is said: "Parties are 'all persons having a right to control the proceedings, to make defense, to adduce or examine witnesses, and to appeal from the decision, if an appeal lies.' Privies are those who have mutual or successive relationship to the same right of property or subject-matter, such as 'personal representatives, heirs, devisees, legatees, assignees, or judgment creditors or purchasers from them with notice of the fact.'" The defense of *res adjudicata* is therefore, available to the defendant.

The judgment should be affirmed. It is so ordered. All concur.