CARPENTER, Appellant, v. EVA ROTH et al.

Division One, January 16, 1906.

1. **APPELLATE PRACTICE:** New Issues: Sale: Consideration. A failure to plead inadequacy of consideration, in plaintiff's suit to set aside a deed made by the sheriff as a cloud upon his title, and a failure in the motion for a new trial to direct the chancellor's attention to error in ruling out competent evidence, if any such was excluded, shut off appellant's right to have the appellate court consider the assignment of inadequate consideration.

2. **JURISDICTION:** Justice Judgment: Affirmative Showing. The statute does not require the justice of the peace to set forth in the judgment that he is a justice of the peace in a certain city or any other fact showing where his office is. A narration in the judgment that the judgment was rendered "before Henry W. Burke, a justice of the peace within the city of St. Joseph, in and for Washington township in the county of Buchanan and State of Missouri," would not prove that Burke was a justice of the peace "in the city of St. Joseph," for the statute does not require the justice's docket to contain such a recital. But the fact that the city of St. Joseph is in Washington township can be shown in other ways.

3. ————: **Justice in City.** A justice in a city is a justice of the municipal township in which the city is situated having jurisdiction of civil cases.

4. **EQUITY:** Appellate Practice: **Errors at Trial.** In an equity case the appellate court will look into the whole record, and if the judgment is right and founded on competent proof, it will not consider mere questions of the admissibility of evidence and the ruling of the chancellor thereon.

Appeal from Buchanan Circuit Court.—*Hon. H. M. Ramey, Judge.*

AFFIRMED.

*William E. Sherwood* for appellant.

(1) The jurisdiction of the justice of the subject-matter was special, and the law requires that the record made by that court in entering up a judgment *in rem* to disclose that jurisdiction; and will not permit property to be sacrificed to any such failure. (2) The failure of such justice's record to disclose jurisdiction of the subject-matter can not be supplied by parol or by spoliation, or by false representation of the transcript in proceedings subsequent to the justice's transcript. (3) Where unincumbered property worth $1,500 is sold for $12.50 on such transcript judgment, and plaintiff offers to have an accounting of indebtedness and asks to be allowed to pay the same, it will be presumed the property was sacrificed to the error in the

justice docket to show jurisdiction of the subject-matter; and it was error in the trial court to refuse to hear that evidence. In support of these points we submit the following authorities and urge that the case of Corrigan v. Morris, 43 Mo. App. 456, is identical with the case under consideration and is decisive of the controversy: Corrigan v. Morris, 43 Mo. App. 456; State ex rel. v. County Ct., 66 Mo. App. 96; Bank v. Doak, 75 Mo. App. 336. (4) This action before the justice of the peace was a special statutory proceeding to enforce special bills. Justices of the peace generally had no jurisdiction to enforce a special taxbill. Jurisdiction in such actions was only given to such justices of the peace as were justices "in said city" of St. Joseph in case the bill did not exceed $300. Sec. 5664, R. S. 1899. Not only must the justice be a justice in said city, but the proceeding being *in invitum*, purely statutory, not in accordance with the comman law, and against common right, and the court being one of special and limited jurisdiction, every essential prerequisite of the statute conferring the authority must appear on the face of the proceedings. Cunningham v. Railroad, 61 Mo. 36; Haggard v. Railroad, 63 Mo. 303; Rousey v. Railroad, 51 Mo. App. 658; State ex rel. v. St. Louis, 67 Mo. 117; Corrigan v. Moores, 43 Mo. App. 461; State ex rel. v. Hager, 91 Mo. 455; State ex rel. v. Railroad, 149 Mo. 644; State ex rel. v. Snyder, 139 Mo. 549; Leonard v. Sparks, 63 Mo. App. 594; Belske v. Lamp, 91 Mo. App. 479. A valid judgment is an indispensable prerequisite of a valid sale. Burnham v. Hitt, 143 Mo. 414; Harness v. Cravens, 126 Mo. 233. (5) There was no division of the lots as required by section 3185. Our law carefully guards against a sacrifice of the debtor's property. Kelly v. Hurl, 61 Mo. 468; Gordon v. O'Neil, 96 Mo. 356; Montgomery v. Miller, 131 Mo. 529; Lewis v. Whitten, 112 Mo. 328; Holworth case, 113 Mo. 520. (6) Defendants were not innocent purchasers. With full knowledge that the judgment was void on its face, they

sold the lots and bought them in.   Mann v. Best, 62 Mo. 491; Lennox v. Clarke, 52 Mo. 117;   Hewitt v. Weatherby, 57 Mo. 276; Harness v. Cravens, 126 Mo. 233.   (7)   Where any unfairness or irregularity exists, and inadequacy of price is shown, the sale will be set aside.   Durfee v. Moran, 57 Mo. 374; Lankford v. Jackson, 21 Ala. 650; Woods v. Dewey, 56 Kas. 409; Bean v. Hoffendorfer, 84 Ky. 685; Kaufman v. Walker, 9 Md. 229; Conroy v. Carroll, 82 Md. 127; Pattison v. Josselyn, 43 Miss. 373; Douham v. Hoover, 135 Mo. 210; Cole v. Madden, 91 Mo. 585.

*Graham & Fulkerson* for respondents.

(1)   This judgment should be affirmed because the trial court committed no error, and the judgment rendered is for the right party.   There is no statute in this State requiring that the justice of the peace, in a case of this kind, shall recite, in the body of his judgment, that he has jurisdiction. And without such a statute the rule in this State is, that if such jurisdictional fact appears, from any of the proceedings before the justice, it is sufficient.   Karnes v. Alexander, 92 Mo. 660.   The fact that Henry W. Burke, the justice before whom the taxbill suit was tried, and by whom the judgment was rendered, was a justice in Washington township, appears from each and every proceeding in the case, from the filing of the suit and issuing of summons to and including the execution of the deed.   And it is admitted by appellant that the city of St. Joseph is within Washington township.   Under this admission Judge ELLISON's opinion on rehearing in the Corrigan case is directly in point, and sustains the finding and judgment of the trial court. Corrigan v. Morris, 43 Mo. App. 463. But this identical question has been before this court, and its conclusion in those cases furnished the authority on which the trial court based its judgment in this case.   Harris v. Hunt, 97 Mo. 571; Karnes v. Alex-

ander, 92 Mo. 660. (2) Appellant has a great deal to say on the subject of inadequacy of price. But such has no place in this appeal, and is wholly foreign to the issues of this case. Inadequacy of price is not even alleged in his petition. There could be no error in excluding evidence on that question.

LAMM, J.—Carpenter owned lots 19 and 20 in block 2 in Jackson's addition to the city of St. Joseph. During his ownership, on August 14, 1899, the city provided by special ordinance for the laying of a four-foot brick sidewalk on the west side of Thirteenth street in front of said lots. The contract was let to Helsley Brothers who performed. On November 27, 1899, two special taxbills were issued by the city engineer of said city, whereby it was certified that the work of constructing said sidewalks was completed in accordance with ordinances, naming them; that the cost had been computed at $11.43 for each lot. No complaint is made as to the validity of the ordinance or the taxbills. The statutes (R. S. 1899, sec. 5664), provide that the life of the lien of such bills shall be two years after the maturity thereof. These bills matured in thirty days from date and the bills were duly assigned to respondent Fred Roth. The Statute of Limitations being about to run, and Carpenter having neglected and refused payment of the bills, Roth, on the 30th day of October, 1901, commenced suit upon the bills before Henry W. Burke, a justice of the peace within and for Washington township in Buchanan county, Missouri. Summons issued and was duly served, the cause proceeding to judgment before the justice on the 11th day of November, 1901. The validity of this judgment is assailed only on the ground that the judgment itself does not recite the alleged jurisdictional fact, to-wit, that the suit was brought before a "justice of the peace in said city"—suits on special taxbills up to $300 being permitted before justices of

the peace in cities of the second class under section 5664, supra. The petition was in two counts, as was proper, and the judgment followed the petition, the finding on each count being $13.60—one finding being declared a special lien against lot 19, and the other against lot 20 and the judgment otherwise being in form. A certified transcript of this judgment was filed in the office of the clerk of the circuit court in Buchanan county on November 13, 1901. An execution followed from said office on the 17th day of December, 1901, which, in effect, was a dual execution, one on each finding in the judgment with apt narrations, and is referred to in defendant's answer as "two executions."

The return on the execution shows a separate levy on each of the two lots, a due advertisement and a sale on the 10th day of January, 1902, that Eva R. Roth purchased lot 19 for the sum of $7.50 and purchased lot 20 for the sum of $5.

It seems that a deed was made and acknowledged by the sheriff to Eva Roth conveying the interest of Carpenter and Mrs. Carpenter in both the lots, showing a sale of the lots together and not separately for the proportionate share of the tax due on each. A suit was brought involving the validity of this deed and it was declared void. Thereupon, the sheriff executed an amended deed in which it was shown that the lots were levied on separately for the tax adjudged against each, were put up separately and bid off separately for the respective sums aforesaid, and the deed otherwise complied with the law.

In January, 1902, plaintiff commenced this suit in equity, the object and general nature of which was to vacate the judgment of the justice and to annul the amended deed as a cloud upon plaintiff's title. The cause was tried on an amended bill, setting forth, *inter alia,* that plaintiff was the owner of the lots in fee; that a suit was instituted before Burke, a justice of the peace within and for Buchanan county on the taxbills

hereinbefore referred to, describing them; and that a judgment by default was rendered thereon. Said judgment is then set forth *in haec verba*. That a sale was made by the sheriff under a transcript execution, at which sale the said sheriff offered lots 19 and 20 for sale and did sell them jointly for the gross sum of $12.50 and executed a deed, which deed was thereafter adjudged to be null and void on its face. That thereafter, on the 3rd day of October, 1902, defendant induced said sheriff to execute another deed, a pretended correction of an alleged error in said first deed, wherein it was recited that said lots were sold separately and for separate sums. That said recitals were wrongful, false and fraudulent and made for the purpose of trying to maintain said sale, by the sheriff, "instead of having it appear that he did not know how to make a sale" under said execution. That the recitals in the first deed were true; that the justice of the peace did not have jurisdiction to render such judgment or issue any process, and for that reason, as well as on account of the fact that the lots were in fact sold jointly for a gross sum in spite of the contrary allegations in the amended deed, the sale was void and the judgment itself was void and both were prayed to be cancelled and annulled as a cloud upon plaintiff's title. The bill ends as follows: "Plaintiff further here offers to have an accounting made and to pay said defendants such sums as the law and equity shall require to be paid."

To this bill, defendants interposed an answer of admission, and denials, moreover alleging that after the rendition of the justice judgment, defendant Fred Roth caused a transcript to be filed, and thereafter caused the clerk of the circuit court to issue separate executions upon separate counts of said judgment against said lots, directing the sheriff to sell the property described in each execution to satisfy the same. That in pursuance of separate commands in each of

said executions the sheriff did make a levy, and on the 10th of January, 1902, by authority thereof, did separately sell said lots, and the defendant Eva Roth was the highest and best bidder for said lots and each of them was separately sold by said sheriff. That prior to the suit before Burke, Fred Roth notified plaintiff that he held the bills and requested payment, but payment was refused. That thereupon suit was instituted to prevent the bar of the statutes, and defendants have spent and become liable for large sums of money greatly in excess of the amount involved in said taxbills. That had plaintiff treated Roth with that degree of fairness demanded by courts of equity there would have been no necessity for any litigation between the parties, etc.

The chancellor found for defendants and entered a judgment dismissing the bill, and plaintiff, perfecting an appeal, brings the case here for review.

At the trial plaintiff was sworn as a witness and testified he owned the lots in question and is now in possession of them. On cross-examination this question was asked: "Q. You had knowledge all the time about the taxbills being issued?" An objection being here interpolated, the court said: "As I understand the statement of Mr. Sherwood (plaintiff's counsel) and the pleadings taken in connection therewith, he admits that this suit (the justice suit) was brought and that service was had on him, and he raises only one question, that is, whether or not the record affirmatively shows that the justice of the peace had jurisdiction, or had his office in Washington township or in the city of St. Joseph. There is no other issue in this case."

In this formulation of the issues, plaintiff acquiesced by his silence.

The sheriff's deed sought to be cancelled was then introduced, and it, in addition to the narrations heretofore alluded to, set forth the transcript execution in full, and in this transcript execution, so copied into the

deed, the following narration appears: "Whereas, Fred Roth, . . . before Henry W. Burke, a justice of the peace *within the city of St. Joseph* in and for Washington township in the county of Buchanan, State of Missouri, recovered," etc.

Plaintiff next introduced a transcript of the justice's judgment filed June 23, 1903. This transcript bore the caption, "State of Missouri, County of Buchanan, ss." It shows a judgment by default, and nothing appears therein to identify the justice as a justice in St. Joseph, or in Washington township. It is signed thus: "Henry W. Burke, Justice of the Peace," and certifies it was made for the purpose of correcting an error in the original transcript. What the error was, thus attempted to be corrected, is not pointed out. To the offer of this evidence defendants objected for the reason that the execution was issued under the original transcript. Thereupon the court called for the original transcript and plaintiff's counsel produced it. Thereat the court ordered them both introduced. In this emergency, plaintiff's counsel said: "I do not want to be introducing a transcript that recites that Judge Burke is a justice of Washington township." Plaintiff objected to the original transcript as incompetent and his objection was overruled.

The original transcript being introduced, its caption reads: "State of Missouri, county of Buchanan, ss. Before Henry W. Burke, a justice of the peace for Washington township," and is otherwise the same as the amended transcript, so far as we can see.

Here plaintiff rested.

Defendants to sustain their defense introduced Justice Burke and by him showed he was a justice of the peace of Washington township. This evidence was objected to, the objection overruled and plaintiff excepted. Thereupon it was proved by him that he had been a justice of the peace in said township for over seventeen years; had lived in Washington township

and the city of St. Joseph since 1868. And then, over
the objection of plaintiff, viz., that it is "not compe-
tent to supply the record," and exception saved, it was
shown he kept his office in the city of St. Joseph and
for a considerable part of the time in the courthouse,
where it was in October, 1901. It was further shown
by him that the boundaries of the city of St. Joseph
are wholly within Washington township.

On his cross-examination it was shown that Wash-
ington township comprises more than the city of St.
Joseph.

Defendants next introduced the county clerk who
produced the records of the county court and therefrom
it appeared that Washington township is in Buchanan
county, Missouri, and is one of the municipal town-
ships into which that county was divided.

At this stage of the trial the following admission
was made: "Plaintiff admits that the proposed evi-
dence will show that the city of St. Joseph lies wholly
within Washington township but that a large part of
said township lies outside of the city."

Defendants next introduced the original petition
in the justice court. Also the summons and the return
thereon. To this evidence plaintiff interposed the ob-
jection "that it was incompetent, irrelevant and imma-
terial." The original petition shows it was entitled
thus: "Before Henry W. Burke, a justice of the peace
within and for Washington township, in Buchanan
county, Missouri." It described the real estate as in
the city of St. Joseph, Missouri, and by apt narrations
sets forth the cause of action on the taxbills. The
caption of the summons is as follows: "The State of
Missouri to the constable of Washington township,
Greeting," and the summons narrates that said consta-
ble is commanded to summon James W. Carpenter and
Mrs. James W. Carpenter, his wife, "to appear before
the undersigned, one of the justices of the peace of
Washington township in Buchanan county . . . . at

my office in said township to answer," etc. The return shows it was served in Washington township, Buchanan county, Missouri.

Thereupon, the defendants offered in evidence the original transcript execution on which the sheriff's deed was based. It will not be necessary to show its terms further than to state that it set forth a judgment rendered "Before one Henry W. Burke, a justice of the peace within the city of St. Joseph, in and for Washington township, in the county of Buchanan and State of Missouri." To the introduction of this execution, the plaintiff interposed the objection that the quoted narration last above did not appear in the transcript itself and because it was interlined in the execution in a handwriting not that of the clerk. The objection was overruled and appellant excepted. Following this, the return on the execution was introduced showing as heretofore stated.

Defendants having rested, plaintiff's counsel recalled Mr. Carpenter for further examination and asked him this question: "Q. Mr. Carpenter, what is the property worth?" The question, being objected to, was ruled out and plaintiff excepted.

In the motion for a new trial no error is claimed in the rejection of competent proof, nor does the petition assign as a reason for setting aside the deed and sale in question that the sale was improvidently made for an inadequate consideration. Appellant's learned counsel devotes portions of his elaborate brief to the question of inadequacy of consideration. But, because of his failure to plead such fact, coupled with his failure to direct the chancellor's attention to error in ruling out competent evidence, if any such was excluded, in his motion for a new trial, no consideration should be paid to that question here. The same disposition must be made of the allegations in the petition to the effect that the narrations in the sheriff's amended deed were false, wherein it is said that the lots were sold separate-

ly and for separate sums, and the further allegations that, in point of fact, the lots were sold jointly and for a gross sum, because no proof whatever was offered to sustain any such averment.

This leaves the case to stand or fall here on one simple proposition, namely, did the justice of the peace have jurisdiction? And that question is settled against appellant in Harris v. Hunt, 97 Mo. 571. Conceding that the jurisdiction should appear from the proceedings, yet the proceedings are not alone the judgment. [Sutton v. Cole, 155 Mo. l. c. 213; City of Tarkio v. Clark, 186 Mo. l. c. 297.] The statute provides that a justice shall keep a docket and specifically commands what he shall enter therein. [R. S. 1899, sec. 3844.] Nowhere does the statute command he should set forth in his judgment that he is a justice in a certain city or any other fact showing where his office is. Since an early day it has been the law in this State that a justice's docket, proper, is only evidence of facts required by law to be kept therein. [Brown v. Pearson, 8 Mo. 159; Palmer v. Hunter, 8 Mo. 512; Heman v. Larkin, 99 Mo. App. l. c. 298.] If then, Justice Burke had made a narration in his judgment to the effect that he was a justice of the peace "in the city of St. Joseph," that narration would seem not to have proved itself.

The statute provides (sec. 5664) that " . . . when the amount due on any taxbill does not exceed three hundred dollars, suit may be brought thereon before any justice of the peace in said city, as in other civil cases, and such justice of the peace," etc. A similar statute was before this court in the Harris case, supra, and it was there held that the legal meaning of a justice in a city was a justice in the municipal township in which the city was situated having jurisdiction in civil suits. Cities do not elect justices—strictly speaking there is no such a thing as a justice in a city except possibly in St. Louis. Justices are municipal township officers. [R. S. 1899, sec. 3805.] The pro-

ceedings before the justice included the summons and that summons showed beyond cavil or question that Burke was a justice of the peace in the municipal township of Washington. It stands practically conceded by admission that the city of St. Joseph is in the municipal township of Washington. This being an equity case, the court will look into the whole record and if the judgment is right and founded on competent proof, mere questions of admissibility of evidence and the rulings of the court, *nisi*, thereon are of little force and need not be considered. [Sheridan v. Nation, 159 Mo. 27.] In this case from the narrations in the sheriff's deed, the original transcript, the justice's summons and the return thereon, and the conceded facts of the case, it sufficiently appears that Justice Burke had jurisdiction to render the judgment assailed.

Therefore, the judgment is affirmed.

All concur, except *Brace, P. J.*, absent.