L. M. PLUMMER, Appellant, v. LIDA L. KNIGHT et al., Respondents.

Springfield Court of Appeals, May 8, 1911. Motion for Rehearing Overruled June 3, 1911.

1. APPEAL AND ERROR: Equity Cases: Reviewing Errors as to Admission of Evidence. On appeal in an equity case all the evidence is before the appellate court and the issues of fact, as well as those of law, are before the court for review, and although incompetent testimony may have been admitted by the trial court, the appellate court will sift the competent from the incompetent and render the proper judgment, and will not consider mere questions of the admissibility of evidence, and the ruling of the chancellor thereon.

2. DEEDS OF TRUST: Mortgages: Foreclosure Sale: Authorized Sale: Principal and Agent: Ratification. In a suit to foreclose a deed of trust the defense was that there had already been a valid foreclosure sale under the deed of trust by the sheriff as acting trustee several years previously. The plaintiff claimed that such foreclosure was not valid for the reason that the foreclosure sale had not been ordered by the holder of the note or his authorized agent. The evidence is examined and *held*, to show that the sale was ordered by the loan agent of the holder of the note; that the agent at the time had no authority to order the sale, but on notifying his principal that the property had been advertised for sale under the deed of trust the principal had fully ratified the same, then the sale was valid even though the loan agent had subsequent to the sale notified his principal that the sale had not taken place and the fact that the agent had embezzled the proceeds of the sale would not effect the ratification.

156 App.—21

3. ———: ———: ———: ———: A foreclosure sale of a deed of trust made without authority of the legal holder of the note, would in a controversy between the owner of the note and the purchaser at the sale, be declared void.

4. ———: ———: ———: ———: ———, In a suit to foreclose a deed of trust, the defense was that there had been a valid foreclosure of the deed of trust several years previously; plaintiff claimed that the first foreclosure had not been authorized by the legal holder of the note; it appeared that the sale had been authorized by the loan agent of the owner of the note, but this agent had no authority to order the sale. There was no evidence that the agent made any representations or claims to the purchaser at the first foreclosure sale that he was acting in any respect as the agent of the owner of the note, and there was no proof that such purchaser relied in any way upon the acts of the agent. *Held*, that the doctrine of estoppel would not apply.

5. ———: ———: ———: ———: ———: **Agent to Collect Not Agent to Authorize Foreclosure.** An agent to collect an interest coupon or a note, secured by a mortgage or deed of trust, containing a power of sale, has no implied authority, by reason of such agency, to order the foreclosure of the mortgage.

6. ———: ———: ———: ———: **Burden on Purchaser to Show Authority to Foreclose.** At a foreclosure sale under a deed of trust, it appeared that neither the sheriff, who acted as trustee in making the sale, nor the purported agent of the owner of the note, who had ordered the sale, had possession of the note or deed of trust. *Held*, under such circumstances that it was incumbent upon those purchasing at the sale in a suit where the validity of such sale was questioned, to show that either the agent or the sheriff had express authority from the holder of the note and deed of trust to foreclose.

7. ———: ———: ———: ———: ———. The purchasers of land at a trustee's sale have no right to assume or presume that the sheriff, as acting trustee, was authorized to foreclose the deed of trust. They are required at their peril to determine whether or not he had such authority.

8. ———: ———: ———: ———: **Principal and Agent: Ratification.** Where a loan agent had ordered a foreclosure sale under a deed of trust, and had notified the general agent of the holder of the note that the sale had been ordered, and said general agent fully ratified the act of the loan agent in ordering the sale, it is not material that the sale had actually taken place without the knowledge of the general agent at the time he ratified the action of the loan agent in ordering the sale.

9. **PRINCIPAL AND AGENT: Authority to Collect Notes: Assumption of Authority.** Where a principal knowingly permits an agent to assume authority to collect notes or holds him out to the public or to the maker of the note as possessing such authority, and money is paid to him in reliance thereon, the payment will be good, although no authority in fact was given.

10. ———: **Authority From Principal.** No one can become the agent of another, except by the will of the principal, either expressed, or implied from the particular circumstances.

11. ———: ———: **Custom: Usage.** Any usage or custom pertaining to any particular business will not affect the principal nor enlarge the scope of the agent's authority, if not known to the principal at that time, unless it has existed for such a length of time and becomes so widely known as to warrant the presumption that the principal had it in view when he appointed the agent.

12. ———: **General Agents: Private Restrictions.** When the principal puts an agent forward as a general agent, though in a particular line, or places him in a position where others are justified in the belief that his powers are general, the restrictions that may be imposed upon him privately will be immaterial except between him and his principal.

13. ———: **Ratification.** The ratification of a part of an action of an agent is a ratification of the entire transaction.

14. ———: ———: **Existing Agency: Sufficiency of Evidence To Show Ratification.** Where an agency has been shown to exist between the parties the facts will be liberally construed in favor of the approval by the principal of the act of the agent, and very slight circumstances will sometimes suffice to raise the presumption of ratification.

15. ———: ———: **Ratification Cannot be Repudiated.** A ratification when once made becomes irrevocable and cannot afterwards be repudiated by the principal.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*H. L. Shannon* for appellant.

(1) The deed of trust securing the note in controversy in this case, authorizes a sale by the trustees, or in his absence by the sheriff, in case of default in pay-

ment of interest or principal, at the request of the legal holder of said notes and unpaid coupons. Therefore a sale without authority from the legal holder of said note would be void. Magee v. Burch, 108 Mo. 336; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Dexter v. Morrow, 76 Minn. 413, 79 N. W. 394; White v. Madigan, 78 Minn. 286, 80 N. W. 1125; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570. (2) Acts from which authority to do a specific act can be implied must be of the same general character and effect. The fact that a principal has allowed one to act as his agent in matters of one kind, ordinarily raises no presumption of authority to act in matters of a different kind, and is inadmissible for that purpose. 31 Cyc. 1664; Watson v. Race, 46 Mo. App. 546; Hefferman v. Boteler, 87 Mo. App. 316; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163. (3) A ratification can occur only when the person ratifying has full knowledge of what has been done. Case v. Packing Co., 105 Mo. App. 168; Johnson v. Fecht, 94 Mo. App. 605, 185 Mo. 335; Gaskill v. Lead Co., 84 Mo. App. 521; Steunkle v. Railroad, 42 Mo. App. 73; Bank v. Marr, 129 Mo. App. 26. (4) An agent to loan is not presumed to have authority to collect. 31 Cyc. 1371; Padley v. Neill, 134 Mo. 364. (5) The fact that the note in controversy was payable at Newell's office did not constitute him Plummer's agent to collect the note. Designating the office of a certain person as the place for the payment of a note does not give such person authority to collect the note. Cummings v. Hurd, 49 Mo. App. 139; White v. Kehlor, 85 Mo. App. 557. (6) The trustee in a deed of trust has no authority to collect a note secured by such deed unless it is in his possession for that purpose. The note in controversy in this case was not in possession of the trustee when he made the sale or in possession of any one attending the sale, a circumstance which in itself was a badge of fraud, so that the purchasers at said sale were negligent, and where one of two innocent parties must suffer, the loss must fall on the one whose negligence

brings it about. McGuire v. Donovan, 108 Mo. App. 511; Bank v. Commission Co., 93 Mo. App. 123; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570. (7) Where circumstances are relied upon to prove an agency it must be shown that the principal has acquiesced in or ratified similar acts of assumed agency. Newell had never foreclosed, or directed the foreclosure of a deed of trust or mortgage for Plummer by either express or implied authority. Therefore the law will not imply that he had authority to foreclose the deed of trust in controversy from such acts as he had performed as Plummer's agent. Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Dexter v. Morrow, 76 Minn. 413, 79 N. W. 394; White v. Madigan, 78 Minn. 286, 80 N. W. 1125; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570. (8) Newell did not have possession of the note and deed of trust in controversy, nor did the sheriff who acted as trustee in foreclosing said deed of trust, at the time of the foreclosure. Therefore, it is incumbent on those purchasing at the sale, and their grantees, to show that either Newell or the sheriff had express authority to foreclose. 31 Cyc. 1646; Bank v. Commission Co., 93 Mo. App. 123; Padley v. Neill, 134 Mo. App. 364. (9) The doctrine of agency by estoppel does not apply in this case, because it does not appear that the purchasers at the alleged foreclosure sale were induced to rely on any act of Plummer by which Newell was held out as his agent. 31 Cyc. 1243; Adv. Co. v. Wanamaker, 115 Mo. App. 270; Hackett v. Van Frank, 105 Mo. App. 384. (10) The notice of sale given J. T. Owen, sheriff of Jasper county was insufficient in that it did not purport to be made on the request of the legal holder and owner of the note in question. Welsh v. Cooley, 44 Minn. 446, 46 N. W. 908; Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333; Roche v. Farnsworth, 106 Mass. 509.

*McReynolds & Halliburton* for respondents.

(1) If the facts and circumstances relied upon to establish an agency afford any evidence, it is for the jury or court as trier of the facts to determine their effect. Hooper, Admr. v. Bradbury, 69 Mo. App. 632; Houblet v. Mill Co., 77 Mo. App. 672. (2) A principal is bound to the extent of agent's apparent authority, and if such principal knowingly permitted its agent to assume authority to collect notes or held him out to the public or to the maker of the note as possessing such authority and the money was paid to him in reliance thereon, the payment will be good enough though in fact no authority was given. May, Admr. v. Mortgage & Trust Co., 138 Mo. 275; Bank v. Ins. Co., 145 Mo. 127. (3) Presumption as to general agency. When an agency is shown to exist, the presumption would be that the agent's authority was general, rather than limited; and the agent's authority in this case is held to result by inevitable implication, from the long continued and repeated acts of acquiescence. Sharp v. Knox, 48 Mo. App. 169. (4) It has been in effect repeatedly held in this state that agency and the scope of an agent's authority are facts to be proven like other facts. Gibson v. Zeibing, 24 Mo. App. 65; Gro. Co. v. Capen, 23 Mo. App. 301; Wheeler v. Metropolitan Co., 23 Mo. App. 190; Brooks v. Jamison, 55 Mo. 505; Franklin v. Globe, 52 Mo. 461; Edwards v. Thomas, 66 Mo. 468. (5) The authority of an agent to collect and receipt for his principal may be shown by the course of dealing between them, although the debtor did not know of such course of dealing. Gibson v. Zeibig, 24 Mo. App. 65. (6) The notice of sale given in this case by J. T. Owen was sufficient. It was in full accord with the statute (R. S. 1909, sec. 2843). Mere omissions and inaccuracies in these respects not calculated to mislead will not be regarded. Powers v. Kneckhoff 41 Mo. 425; Stephenson v. January, 49 Mo. 465.

STATEMENT.—This suit was commenced in February, 1910 in the circuit court of Jasper county, Missouri, for the purpose of foreclosing a deed of trust made by John W. Knight and wife on the 18th day of October, 1902, conveying 357 acres of land in Jasper county to H. W. Blair as trustee, for the purpose of securing a promissory note for $7500 payable to J. P. Newell. Newell sold this note and coupons to A. A. Plummer of Franklin, Pennsylvania, who afterwards died leaving a will of which the plaintiff in this suit became the executor. A. G. Newell and J. P. Newell comprised a partnership in business at Carthage, Missouri, and were engaged, through the activities of J. P. Newell in loaning money on real estate and selling the notes thus secured to persons in the East, and A. A. Plummer was one of their customers. The Newell firm were also financial agents for Plummer, looking after his loans and collectin his interest on notes as they became due in Jasper county, and had in charge first and last a large number of his notes aggregating perhaps $100,000.

The deed of trust securing the note in question was what is commonly called a trust deed and contained the usual power of sale in the trustee in case of default in payment of the note, with a provision that in case of the absence of the trustee the sheriff of Jasper county might act in his place.

The defense in the case was that in 1903 there had been a valid foreclosure of the deed of trust. Judgment was rendered for the defendant from which the plaintiff duly appealed.

The evidence developed at the trial was uncontradicted that there was an attempted foreclosure of the deed of trust by sale and a deed made thereunder by the sheriff of Jasper county acting as trustee. It was conceded by the defendants that on the 18th day of April, 1903, John W. Knight, the maker of the note secured by the deed of trust, defaulted in the payment of the interest then due and that by the terms of the deed of trust

the same became subject to foreclosure under the power of sale therein contained on account of such default by reason of the failure of the maker to pay interest coupons. It was further conceded that by the terms of the said deed of trust the then acting sheriff of Jasper county was authorized to advertise and sell the said land on request of the legal holder of the said note in the absence of H. W. Blair, the trustee. And it was further admitted that at the time the foreclosure took place and a long time prior and subsequent thereto, the said H. W. Blair was absent from Jasper county in the city of Washington, D. C.; that J. T. Owen, the sheriff of Jasper county, was authorized by the terms of the deed of trust in the absence of the trustee to advertise and sell said land, and that on the 28th day of May, 1903, after having advertised the foreclosure of the deed of trust, he did sell said land for the purpose of satisfying the notes secured by said deed of trust and that the deeds made by him as the sheriff of Jasper county as acting trustee in pursuance of such sale contain all the recitals necessary to good and valid conveyances. That the Regan Land Company and M. J. Palmer and Mary J. Palmer are owners of all the interest in said land, if any, that was sold at the said sale and that the said M. J. Palmer and Mary J. Palmer were purchasers at the sale. It was further admitted by the appellant that the trustee's deed under said deed of trust was duly executed by J. T. Owen, sheriff of Jasper county, as acting trustee under said deed of trust, and that the said deed contains all the necessary recitals to show on its face a valid conveyance of the land described therein by the said sheriff as acting trustee under said deed of trust and that said deed was duly acknowledged and recorded as provided by law on the 28th day of May, 1903. It was further admitted that the order of publication was duly and regularly made as provided by the deed of trust except that it failed to recite that the sale

was made by the order or request of the owner or holder of the note.

The suit, as we have stated, was resisted by the defendants because the court had no authority to foreclose the deed of trust on the ground that such deed of trust had been previously legally foreclosed on the 29th day of May, 1903, by a sale of said land therein described under and by virtue of the terms of the deed of trust.

Appellant contends that the sale was invalid and that his right to foreclose was unimpaired because J. T. Owen, the said sheriff of Jasper county and acting trustee, was not in fact authorized by the legal owner and holder of the note in controversy to foreclose the said deed of trust. And he also contends that the notice of sale was insufficient because it did not purport to be made by authority of the legal holder and owner of the said note.

After the date of the sale, Plummer having died, his estate passed into the hands of the present plaintiff as executor of his will, and from the date of the sale to the maturity of the principal of the note, Newell paid the interest thereon himself as it fell due under the pretence that the payments were in fact being made by Knight, and by such payments and representations he continued to deceive Plummer and conceal from him and his representatives for a period of some seven years the fact of the foreclosure sale.

The record in this case is barren of any evidence that the acting trustee and sheriff of Jasper county, J. T. Owen, who foreclosed the deed of trust by sale, was ever expressly authorized or requested by Plummer or his agents to foreclose the same. Respondents contend that Newell was the general agent of Plummer and as such he had authority to direct the foreclosure of the deed of trust and that as general agent he did direct the foreclosure of the same; also that the plaintiff's testator after the sale, with knowledge that a foreclosure

had been ordered, ratified the acts of Newell in ordering the sale.

On the day before the sale took place and on the 28th day of May, 1903, A. G. Newell of Carthage, Missouri, wired F. W. Officer at Franklin, Pennsylvania, as follows: "Send Knight papers, $7500 loan first mail." Upon the receipt of this telegram, and on the same day it was sent, Officer, in pursuance to the request of Newell, sent the note, deed of trust and correspondence pertaining to the loan to Newell with a letter accompanying the same. At the time of sending his telegram to Officer, Newell also mailed at Carthage, Missouri, to Officer, a letter explaining why he requested the note, coupons, and deed of trust. On the day of the sale, Plummer, who owned the $7500 note, was ill, and was and had been for a considerable time previous by reason of failing health, unable to attend to the management of his business and had appointed F. W. Officer as his attorney in fact to manage such business. The telegram of Newell to Officer to send the Knight papers was in consequence of Newell's knowledge of this fact and he therefore sent the telegram to Officer and not to Plummer himself.

The letters referred to in the preceding paragraph will be found in the opinion. To understand more fully the correspondence between Newell and Officer it must be borne in mind that it was carried by mail; that Officer resided at Franklin, Pennsylvania, and Newell at Carthage, Missouri, and in consequence of the distance, it would be some two or three days before a letter mailed at one place would reach the other. As stated, the letter of Newell explaining the telegram was mailed at Carthage, Missouri, on May 28, 1903, and was received by Officer at Franklin, Pennsylvania, on June 3, 1903, and on the said day Officer mailed his reply to the same. After the sale took place, Newell sent a letter to Officer in which he returned the note and deed of trust and

stated that it had become unnecessary to foreclose the same. The note on its return contained no indorsements in any way notifying Officer that any foreclosure had been made or that any payment had been made on the note.

On the day of the sale, May 29, 1903, George F. Anderson was present for the purpose of representing the purchasers and attended the sale as agent and representative of the Woods, Waller & Holtz Realty Company, a corporation, and he was a bidder at the said sale for all the land described in the deed of trust given by Knight, and wife to H. W. Blair as trustee for Newell securing the note of $7500, recorded in the mortgage records of Jasper county on October 18, 1902. That there was present at the sale, J. P. Newell, the payee of the said note, A. L. Thomas, an attorney of Carthage, Missouri, who was representing J. P. Newell, J. T. Owen, sheriff of Jasper county and acting trustee, M. J. Palmer, with John Harlan of Sarcoxie, Missouri, from whom Palmer secured the money to pay for the land deeded to by the trustee. Anderson testified that he made his bid for the land in good faith for the said parties believing that he was procuring a good title and that he paid his money therefor with the same belief, and previously to making said bid he examined the advertisement and saw that it was regular; that the sale was at the place and time advertised and that his company and other purchasers for whom he bid in the land took immediate possession of the premises purchased and that the company he represented sold the land in good faith to parties defendant who were successors to their title; that none of them ever heard of any claim on the part of A. A. Plummer or any one for him of any interest in the note until after the institution of this suit, a period of seven years after the foreclosure actually took place; that the deeds of the purchasers of the land were recorded in the recorder's office of Jasper county on the day of their purchase; that he bid at the sale for all the land described in the

deed of trust the sum of $8310.38, being the full amount of the debt with interest and costs owing and secured by said deed of trust and costs of sale thereunder; that a portion of the said land bid off by him at the sale, being 117 acres, was deeded by the sheriff as acting trustee, to M. J. Palmer for which the said M. J. Palmer paid the acting trustee the sum of $3169.24 in cash. The evidence further showed that the land in controversy is now worth about the sum of $15,000.

NIXON, P. J.—So it will be seen that the paramount issue presented in this case is as to the authority of the sheriff as acting trustee to make the foreclosure and execute the trustee's deeds. At the trial, J. P. Newell was offered as a witness by the defense and his testimony was received over the objections of the plaintiff. He testified substantially that he had charge of A. A. Plummer's loans and investments in Jasper county and collected the interest or principal of the same when they became due; that he made a loan to John W. Knight, took the note payable to himself which he assigned and turned over to Plummer. That he transacted considerable business for Plummer, perhaps $100,000 worth; that he kept an account of the transactions with Plummer in a ledger, of the loans made and collections and remittances; that the loans were posted and an account kept on his books; that in the management of his business he would, before the notes or coupons became due, send out notices and the persons owing the same would pay them into his office; that when paid he issued receipts and delivered coupons; that notes were generally sent to him for collection before they became due, and when not sent or not in his possession he frequently collected them and issued receipts.

To the admission of this evidence plaintiff objected on the ground that J. P. Newell was incompetent to testify as a witness because the cause of action was one to which Newell was a party, and Plummer being dead at

the time and the contract or cause of action on trial being between Newell and Plummer, disqualified Newell as a witness.

In the same connection there was introduced the ledger accounts referred to by Newell in his testimony, kept by Newell, and showing the loans in his charge for Plummer, which described the notes by date, name of payer, amount, etc., and which ledger also showed that the account was opened with Plummer by Newell on January 13, 1902, the last entry being in 1908. This ledger account with Plummer had a caption in capital letters as follows: "A. A. PLUMMER (F. W. Officer)." And then follows the entries in regard to Plummer's notes.

It must be remembered in considering the objections to this evidence that this is an action in equity and not one at law, and that the rule governing appellate practice as applied to equity cases is different from that applied to law cases. On appeal in an equity case, all the evidence is before the appellate court and the issues of fact as well as those of law are before such court for review, and, notwithstanding irrelevant and incompetent testimony may have been admitted by the trial court, the appellate court will sift the relevant from the irrelevant and the competent from the incompetent and render the proper judgment. [Lacks v. Butler County Bank, 204 Mo. 455, 102 S. W. 1007.] In equity cases the appellate court will consider the relevant testimony and disregard the irrelevant for the reason that such causes are practically tried de novo in the appellate court and the evidence reviewed, and in such cases the appellate court will look into the whole record, and if the judgment is right and founded on competent proof, it will not consider mere questions of the admissibility of evidence and the rulings of the chancellor thereon. [Carpenter v. Roth, 192 Mo. 658, 91 S. W. 540; Welch v. Mann, 193 Mo. 304, 312, 92 S. W. 98; Williams v. Husky, 192 Mo. 533, 90 S. W. 425.]

The primary question raised is as to whether the deed of trust sued on was foreclosed by the acting trustee at the request or order of the owner or legal holder of the note. The evidence tended to show beyond question that it was brought about by the action of J. P. Newell, the financial agent of A. A. Plummer in that section of Missouri, and, as stated, the deed of trust securing the note in controversy authorized, in case of default, H. W. Blair, the trustee, or in his absence, the sheriff, at the request of the legal holder or owner of the said note to foreclose the same. A sale without such authority, in a controversy between the owner of the note and the purchasers at the sale, would be void. [Magee v. Burch, 108 Mo. 336, 18 S. W. 1078; Burchard v. Hull (Minn.), 74 N. W. 163; Dexter v. Morrow (Minn.), 79 N. W. 394; White v. Madigan (Minn.), 80 N. W. 1125; Corey v. Hunter (N. D.), 84 N. W. 570.]

The doctrine of agency is well established that a principal is bound to the extent of an agent's apparent authority, and where a principal knowingly permits an agent to assume authority to collect notes, or holds him out to the public or to the maker of the note as possessing such authority and money is paid to him in reliance thereon, the payment will be good although no authority in fact was given. The statement of these principles is sufficient without enumeration of authorities, as they are elementary. The evidence in this record, however, goes only to the extent of showing the usual course of the transaction of the loan business between Plummer and Newell, and that Newell acted as Plummer's agent in making and collecting loans; Newell's books offered in evidence show transactions running over a long period of time, money received, loaned, collected, and remitted to Plummer, as stated, amounting to a large sum, perhaps $100,000. The evidence further tended to show that the Newells were the only recognized financial agents of Plummer at Carthage, Missouri, and the letters and telegrams introduced in evidence show from their

mode of dealing that the relation of principal and agent existed between them as to these matters.

.It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either express, or implied from the particular circumstances, and that the extent of the agent's authority depends upon the will of the principal; and any usage or custom pertaining to any particular business will not affect the principal, if not known to him, unless it has existed for such a length of time and become so widely known as to warrant the presumption that the principal had it in view when he appointed the agent. [Burchard v. Hull, supra.] But it is equally true that when a principal puts an agent forward as a general agent, though in a particular line, or places him in a position where others are justified in the belief that his powers are general, the restriction that may be imposed upon him privately will be immaterial except between him and his principal. [New Albany Woolen Mills v. Meyers, 43 Mo. App. 124; Baker v. Railroad, 91 Mo. 152, 3 S. W. 486.] But the doctrine of estopped does not apply to this case because at the sale, or prior thereto, so far as the evidence shows, Newell made no representations or claims to the purchasers in any way that would authorize them to believe that he was acting in any respect as the agent of Plummer, and consequently there was nothing to induce the purchasers to rely upon any acts of Newell as the agent of Plummer, and there is no proof of any such reliance. Hence the doctrine of estoppel does not apply in this case. [31 Cyc. 1243; St. Louis G. A. Co. v. Wanamaker & Brown, 115 Mo. App. 270, 90 S. W. 737; Hackett v. Van Frank, 105 Mo. App. 384, 79 S. W. 1013; Hefferman v. Boteler, 87 Mo. App. 316.]

It is not clearly established in evidence whether Newell, while acting as agent for Plummer, ever remitted him any money collected when the notes were still in Plummer's hands and such facts can at best only be es-

tablished in this case by inference resting upon a very uncertain basis. Therefore, it should not be inferred from their general course of business that Plummer had knowledge of or ratified Newell's act in collecting notes for Plummer without having possession of the same. Where circumstances are relied upon to prove an agency, it must be shown that the principal has acquiesced in or ratified similar acts of the assumed agency; and in this case there is no evidence that Newell had ever foreclosed or directed the foreclosure of a deed of trust or mortgage for Plummer either by express or implied authority, and no evidence that he ever collected a mortgage or deed of trust either prior or subsequent to this time with or without express authority of Plummer, unless it be in the case under consideration. The law will not imply that he had authority to foreclose the deed of trust in controversy from the mere fact of his making loans and collecting the interest or the loans when due. An' agent to collect an interest coupon or a note secured by a mortgage or deed of trust containing a power of sale has no implied authority by reason of such agency to order the foreclosure of the mortgage. [Burchard v. Hull, supra; Dexter v. Morrow, supra; White v. Madigan, supra.]

The evidence further shows that on the day of the sale Newell did not have possession of the note or deed of trust in controversy; nor did the sheriff who acted as trustee in foreclosing said deed of trust. Therefore, it is incumbent on those purchasing at the sale to show that either Newell or the sheriff had express authority from the holder of the note and deed of trust to foreclose. [31 Cyc. 1646; The City National Bank v. Goodloe-McClelland Co., 93 Mo. App. 123; Hefferman v. Boteler, supra; Cummings v. Hurd, 49 Mo. App. 139; Padley v. Neill, 134 Mo. 364, 35 S. W. 997.] The purchasers of the land at the trustee's sale had no right to assume or presume that the sheriff was authorized to foreclose the deed of trust. It was their duty to inquire and ascertain as prudent men looking after their own interests, and they were

required at their peril to determine whether or not the acting trustee in assuming to foreclose the deed of trust had proper authority for that purpose. · And if Plummer who owned the note had never authorized Newell to collect it, and if he had never ratified by a long course of conduct the action of Newell in collecting notes without having possession of the same, or if he retained the note in controversy in his own possession and had not given Newell any authority to foreclose the deed of trust and had no knowledge that Newell had taken any steps in that direction and no reason to suppose that Newell would do so—under such facts he had done all that the law required of him to protect his property. The law is not a magician's wand by which the crafty and unscrupulous can transfer the property of careful and prudent business men to the imprudent and unwary and thus allow them to reap without sowing.

The principal, however, must be responsible for the acts of his agent, and the evidence in this case fails to show that the act of Newell as the alleged agent of Plummer was vitalized by any express authority. And the judgment for the respondents must be reversed and the foreclosure ordered unless it can be upheld by reason of Plummer having ratified Newell's agency in the foreclosure of the deed of trust.

The answer of the respondents in this case put in issue the question of ratification by pleading that A. A. Plummer, the legal owner and holder of the note, did by his general and specific acts ratify and confirm the acts of his financial agent in the foreclosure of the said deed of trust on the said premises.. At the time the Knight note for $7500 was negotiated by Newell to Plummer, the latter was a resident of Franklin, Pennsylvania, where he had resided for a long time. F. W. Officer who was an actor in these proceedings was a resident of the same place, and the older members of the Newell family had formerly resided there before moving to Carthage, Mis-

156 App—22

souri.  These three families during their residence at Franklin were well acquainted with each other and the friendly relation was continued by correspondence after the Newell family removed to Missouri.  At the time the trustee's sale took place, Plummer's health had failed so that he had become physically unable to attend to his business affairs, and he had intrusted the management of his affairs, including the loans in Jasper county, Missouri, to F. W. Officer, and had executed to said Officer a power of attorney to manage his business.  Prior to the date of the foreclosure sale, Officer, to enable him to properly attend to Plummer's business, had received from Plummer, among other papers, the Knight note and coupons for $7500, together with the deeds and the correspondence received from Newell pertaining to this loan.  As stated, the incapacity of Plummer to attend to his business and the fact that Officer was in charge of it is indicated by the entry in Newell's ledger, in which he kept the account of Plummer's notes, in the following caption:  "A. A. Plummer (F. W. Officer),"—a memorandum that his correspondence in regard to the business should be with F. W. Officer.

The deposition of Officer taken on the part of the plaintiff was offered in evidence and shows that on the 28th day of May, 1903, the day before the foreclosure sale, a telegram was sent from Newell at Carthage, Missouri, to him at Franklin, Pennsylvania, requesting him to "send Knight papers, $7500 loan, first mail."  Officer in his deposition testified in part as follows:  "Q.  Why was the telegram of May 28th addressed to you?  A.  Because I was acting as attorney in fact for A. A. Plummer.  Q.  As such did you have all the correspondence that was had with reference to the Knight loan?  A.  Yes."  He also testified that the Newells were the only financial agents that Plummer ever employed to look after his business at Carthage, Missouri.  As to the telegram and the condition of Plummer to attend to his business, Officer stated:  "On May 28, 1903, I received a telegram

purporting to be from J. P. Newell of Carthage, Missouri. There seemed to be an error in the wording of the telegram but I understood it to be of the following import,—'Send J. W. Knight papers, $7500 loan, first mail.' At that time I was attorney for A. A. Plummer who was then sick and who has since died. As Mr. Plummer's attorney, I had in my possession a trust deed executed by John W. Knight and Lida L. Knight, his wife." On cross-examination he stated: "Q. At the time of the correspondence in May, 1903, and subsequent, you were attending to A. A. Plummer's business as attorney in fact by reason of his ill health and inability to attend to his own business? A. Yes. So far as I know he had no correspondence after that time with the Newells with relation to the Knight loan." The written power of attorney to which Officer referred and which authorized him to take charge of and conduct the business of Plummer, was not offered in evidence, but the evidence satisfactorily shows that Officer had general charge and management of the business affairs of Plummer on account of his illness, and as such had been intrusted with his papers, including the Knight loan, the note, deed of trust, and the correspondence pertaining thereto. So that the evidence tends to show that Officer was the general agent and *alter ego* of Plummer and that the firm of A. G. Newell & Son of Carthage, Missouri, were the only financial agents Plummer had in making his loans and collections in Jasper county, Missouri.

In connection with the testimony of Officer in regard to the receipt of the telegram of May 28th, he further states that he mailed the Knight note and deed of trust to Newell on that day as requested in the telegram, but that at that time he had no further knowledge in regard to the matters referred to in the Newell telegram than was contained therein except the correspondence in relation to the loan which was in his possession and which he examined prior to writing his letter of that date. On the 30th day of May, 1903, the testimony of Officer shows

that he received a letter from Newell dated May 28, 1903, which was therefore sent on the day the telegram was sent and was in explanation of it. This letter is as follows:

"May 28, 1903.

"F. W. Officer, Esq., Franklin, Pennsylvania.

"Dear Sir: I wired you this morning to send me the papers in the Knight loan which belongs to Mr. A. A. Plummer. My reason for ordering these papers was that I found it necessary to foreclose under this loan and had to have the papers here in order to do so. This loan is secured by property worth several times the amount of the said loan and is as gilt-edged a loan as any we have ever made. The reason it became necessary to foreclose is simply because the party owning the property refuses point blank to pay the interest. He had an option to pay the loan and as he wants to take it up, he is simply refusing to pay the interest in order to force me into advertising it.

"Mr. Knight sold a part of the security in this loan to a Mr. Palmer some time ago and provided in his warranty deed that Mr. Palmer was to assume a part of this first mortgage. A little later, Mr. Palmer became dissatisfied and wanted the mortgage divided so that he would have $3000 on his 117 acres and the balance would remain against the Knight 240 acres. We wrote Mr. Plummer at the time to see if he would do this and he agreed to it, but the parties fooled around for some time in regard to it and did nothing until Mr. Plummer wrote that he did not care to take it. Now that the interest is due, they have simply refused to make payment in order that they can let the property go to sale and one of them bid it in and make the division, placing separate mortgages on the separate tracts.

"Of course we would have let the interest become in arrears, as the property is worth several times the amount of the loan, but we naturally preferred not to do

this. We would not extend and therefore we have advertised the property for sale as above stated. This land will be bid in by one of these parties, undoubtedly, as it is worth in actual cash today about three times the amount of the loan. As soon as the property comes to sale and a settlement is made, we will remit promptly the $7500 with accrued interest. We regret the necessity of having to put you to this trouble but do not see how it can be avoided. Will explain more fully to you if you desire when I am in Franklin.

"Yours truly,
"A. G. NEWELL & SON."

This letter was received by Officer and on June 2, 1903, he replied to the same as follows: "Your favor of May 28th, with explanation of reason for wiring for papers in the J. W. Knight loan for $7500, received. Under the circumstances, I presume that it is best to collect the $7500 with accrued interest and remit same as soon as settlement is made."

In this letter of May 28, 1903, from A. G. Newell & Son to Officer, information as to the facts in regard to the sale was given in a full, truthful and comprehensive statement of the actual proceedings taken by Newell as the agent of Plummer in the collection of the $7500 Knight note, and that he had ordered such sale because it had become necessary to foreclose the loan, and also a statement of how a payment of interest coupons on the note came into default. The statement in this letter as to the interest of and the reason why the parties interested in the land desired it to go to sale is amply corroborated by the other testimony in the case showing that the parties who had assumed the payment of the note had made default for the purpose of enabling Palmer to secure his 117 acres by trustee's sale and pay off his loan of $3000. The letter also stated—"We would not extend and therefore we have advertised the property for sale as above stated. . . . As soon as the property

comes to a sale and settlement is made, we will remit promptly the $7500 with accrued interest."

When Officer was notified of the unauthorized act of Newell in the advertising and other steps taken to collect the note by foreclosure of the deed of trust, he had the option as the agent of Plummer to accept and confirm the act of Newell in behalf of his principal or to repudiate it, and his acceptance and confirmation with knowledge was a ratification or confirmation of the agency of Newell in the sale of the land. The intention of Officer as shown by his letter is unequivocally expressed and he recognized beyond all question Newell as Plummer's agent in collecting the Knight note by foreclosure of the deed of trust and Officer's purpose is susceptible of only one construction. While it is true he did not know at the time a sale had taken place, this was not a necessary or material fact as he deliberately and intentionally ratified the agency of Newell in the advertisement and directed the remittance of the proceeds of the sale as soon as received. The foreclosure of the deed of trust by sale, the ordering of the sale, the advertising of the property, the trustee's deed, and the payment of the money to the trustee by the purchaser were all successive steps connected together constituting one transaction in the collection of the note, and if ratified at all, must be ratified not in part but in whole. When Newell informed Officer as the agent of Plummer that default had been made in the payment of the note and that he had advertised the land for sale under the terms of the deed of trust, and Officer, with such knowledge, ratified the act in contemplation of law, the trustee was authorized by the legal holder of the note to foreclose the deed of trust. The ratification of a part of an act of an agent is a ratification of the entire transaction. [Kelly v. Gay, 55 Mo. App. 39; 31 Cyc. 1258.] Where an agency has been shown to exist between the parties, the facts will be liberally construed in favor of the approval by the principal of the act of the agent, and very slight circumstances will sometimes suf-

Plummer v. Knight.

fice to raise the presumption of ratification. But in this case, we think the evidence is abundant of the express intention to ratify the acts of Newell in ordering the sale under the deed of trust. The ratification, when once made, related back to the time when the unauthorized advertisement and order of sale was made by Newell in behalf of Plummer, and made the agency of Newell to all intents and purposes as effective as though he had acted under express authority of Plummer previously specifically conferred upon him for that purpose. In this case, it is true, the evidence further shows that Newell within a few days after the sale returned the note and deed of trust to Officer with the information that it had been unnecessary to foreclose the deed of trust. The letter contains this significant "P. S.,"—"Gus Knight will pay his interest hereafter as he finds I mean business. He didn't want it foreclosed as badly as he pretended. J. P. N." For several years after this event, Newell, in order to conceal the fact from his principal that he had made the sale and embezzled the proceeds, continued to pay the interest as it became due; but such act of Newell, after ratification of his agency by his principal, puts Plummer in no better position to claim protection, and for whatever hardship may have been caused by such acts of his agent, third parties cannot be held responsible. Nor can the misconduct of Newell, by which he thus concealed his embezzlement, however long continued, in any way impair or revoke the act of ratification. The ratification, when once made, becomes irrevocable, and cannot afterwards be repudiated by the principal even though the approval was for only a short time, nor can the principal thereafter pursue a remedy or offer a defense inconsistent with the ratification or based upon a subsequent repudiation of the agent's acts.

From what has been said it follows that the judgment was for the right party and the same is hereby affirmed. All concur.